## MILLER, Adm'r, v. TIDAL OIL CO.

No. 21431. Opinion Filed Dec. 20, 1932.

Rehearing Denied Jan. 3, 1933.

Kleinschmidt & Johnson, for plaintiff in error.

Y. P. Broome and J. C. Wilhoit, for defendant in error.

RILEY, J. The subject-matter out of which this appeal arises has twice been before this court. Certain land in Creek county was allotted to Robert Marshall, a minor Creek freedman. Sometime about 1909, while a minor, Robert Marshall was married and thereafter a decree was entered in the district court of Creek county conferring majority rights upon him. He then, while under the age of 21 years, executed certain instruments purporting to convey a portion of said land and the oil and gas rights therein and an option to purchase the remaining interest in said land. His grantees thereafter executed oil and gas leases on the land, which were assigned to the Oklahoma Oil Company. Thereafter Robert Marshall brought an action in the district court to set aside the conveyances theretofore made by him. Judgment was rendered against him, which became final, and motion to vacate this judgment was finally denied in June, 1913. In June, 1910, said Robert Marshall was declared an incompetent by the county court and a guardian was appointed for him. Thereafter an attempted settlement of the litigation was had between the guardian and the defendant in the action then pending. Thereunder the

land was reconveyed to Marshall, but the oil and gas leases which had been executed by the grantees of Marshall were confirmed; a portion of the oil and gas rights were also retained by the grantees. This settlement was approved by the county court. About July 12, 1915, the Tidal Oil Company became the owner of the oil and gas leases. In the meantime several wells had been drilled on the land and oil and gas were being produced therefrom. On October 13, 1916, after Marshall had become 21 years of age, and had been discharged from guardianship, he conveyed the land to J. P. Flanagan. Thereafter Flanagan brought an action against the Tidal Oil Company to quiet title to the land and for an accounting for the oil and gas produced therefrom after October 13, 1916. Robert Marshall commenced this action against the Tidal Oil Company to recover for the oil and gas taken from the land between July 12, 1915, and October 13, 1916. Flanagan was finally adjudged to be the owner of the land by virtue of the deed made to him by Marshall on October 13, 1916. Tidal Oil Co. v. Flanagan, 87 Okla. 251, 209 P. 729. Robert Marshall died in September, 1919, and Walton J. Miller was appointed administrator of his estate, and the cause was revived in his name. Judgment was rendered by the lower court in favor of defendant. That judgment was reversed by this court (Miller v. Tidal Oil Co., 106 Okla. 212, 233 P. 696), and the cause was remanded for a new trial. Upon retrial in the district court judgment was again entered in favor of the defendant, apparently upon the ground that Marshall had become of age at the time his motion to vacate the judgment in his original action to recover the land was denied, and upon the further ground that the compromise agreement entered into was valid. This judgment was also reversed upon appeal to this court. Miller v. Tidal Oil Co., 130 Okla. 133, 265 P. 648. The title to the land was finally adjudged to have been in Robert Marshall until October 13, 1916. The only question then left was on the accounting for the value of oil produced from said land during the period between July 12, 1915, and October 13, 1916. The cause was remanded for trial on that question. Trial was had and upon the evidence presented the trial court found that the defendant in good faith during said period expended in the development of the land for the production of oil and gas therefrom the sum of $23,143.50; that the defendant had likewise expended in operating the property during said

period the sum of $7,236.33, and had paid gross production tax on the oil and gas so produced in the sum of $615.15; that the value of oil and gas produced by defendant from said premises during said period was $25,631.37; that the expenditure so made by defendant exceeded the value of the oil and gas produced during the period in the sum of $5,398.65, and that plaintiff was not entitled to receive the highest market value of the oil and gas produced prevailing at any time subsequent to the production thereof, and before the trial of said cause; and therefore found that defendant was not indebted to plaintiff in any sum. Judgment was rendered for the defendant. From these findings and judgment plaintiff appeals.

It is first contended that plaintiff is entitled to receive the highest market value of the oil between the time it was taken from the land and the time of the trial. This contention is based upon subdivisions 1 and 2 of section 5999, C. O. S. 1921 [O. S. 1931, sec. 9986], which provides:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First: The value of the property at the time of conversion with interest from that time, or

"Second: When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party."

In his prayer plaintiff prayed for judgment for the value of the oil and gas "at the highest market value thereof up to and including the day of the trial of this cause."

Thereby plaintiff committed himself to the provisions of the second subdivision of section 5999, supra, and based his right of recovery at the highest market value on the question of whether or not his action had been prosecuted with reasonable diligence.

The trial court made no special findings on the question of whether or not the action had been prosecuted with reasonable diligence, but included in his findings that plaintiff was not entitled to receive the highest market value. This of necessity included a finding, in effect, that plaintiff had not commenced or prosecuted the action with reasonable diligence. This question was made an issue at the trial, and both parties introduced evidence thereon.

The petition alleges that plaintiff reached his majority on January 22, 1916. He conveyed the land to Flanagan October 13, 1916. He did not commence this action until January 18, 1918, four days less than two years after he reached his majority and 15 months after he conveyed, by quitclaim deed, all his interest in the land to Flanagan.

Defendant filed its answer February 25, 1918. Plaintiff filed a demurrer to the answer April 22, 1918. The demurrer was not passed upon until September 20, 1919. The case was first called for trial in October, 1920, about four years after plaintiff had conveyed his interest in the land. Plaintiff contends that the Legislature in framing the statute saving to minors two years after reaching their majority to bring an action, evidently took into consideration their lack of business experience and training and determined such period to be reasonable, and that from this, by inference, we should say that if the action is commenced within two years' time it is commenced with reasonable diligence.

A number of cases are cited which, in effect, hold that reasonable diligence is that diligence which would be deemed reasonable by reasonable and prudent men under the same circumstances. But merely bringing an action within the limitation prescribed by law can hardly be said to be with reasonable diligence where a plaintiff is seeking to hold a defendant liable for the highest market value for the wrongful conversion of personal property, especially that which is subject to the great fluctuation in value such as crude oil, and where such property was steadily increasing in value as in the instant case.

Section 5999, supra, fixing the measure of damages for wrongful conversion of personal property, is identical with the North Dakota statute on the same subject. In Pickert v. Rugg, 1 N. D. 230, 46 N. W. 446, it was held:

"To entitle a person to recover the highest market value between the time of the conversion of property and of the rendering of the verdict, he must affirmatively show such facts as establish clearly that he has commenced and prosecuted his action with reasonable diligence. No presumption will be indulged in his favor and the statute will be strictly construed."

It was there held that delay of eleven months in bringing the action was fatal to plaintiff's claim that he had prosecuted his action with reasonable diligence

In First Natl. Bank v. Minneapolis Northern Elevator Co., 8 N. D. 430, 79 N. W. 874, it was held, as a matter of law, under facts which showed an unexplained delay of eleven months in commencing its action, that the plaintiff had not prosecuted its action with reasonable diligence, and could not, therefore, recover the highest market price.

In Funk v. Hendricks, 24 Okla. 837, 105 P. 352, it was held that what constitutes reasonable diligence under the section of the statute here involved is one of law for the court.

In First Natl. Bank v. Carroll, 103 Okla. 5, 229 P. 165, where the facts showed that the plaintiff had knowledge on December 16th that a ticket which entitled the holder to a bale of cotton represented thereby and of which plaintiff claimed he was the owner, was outstanding, and learned in the following September that the bale of cotton had been sold, and waited until November 26th of that year to bring his action, it was held that the facts did not constitute reasonable diligence within the meaning of section 5999, supra, notwithstanding the statute of limitation gave him two years after the conversion in which to bring his action.

We have been cited to no case, and we have found none, which holds the withholding of the commencement of an action such as this for a period of 15 months to be reasonable diligence within the meaning of subdivision 2 of said section so as to entitle the plaintiff to recover the highest market price of the property converted.

Aside from whether or not plaintiff used reasonable diligence in bringing the case to trial after it was commenced, we hold that, because of the unexplained delay in bringing the action, the trial court did not err in holding plaintiff not entitled to recover the highest market price of the oil between the time of its taking and the trial.

Plaintiff contends that defendant is not entitled to offset the cost of development and production against the value of the oil and gas taken during the accounting period. This contention is based upon the proposition that the original attempted transfer of the title by Marshall being, as stated in Tidal Oil Co. v. Flanagan, supra, "in violation of the law, therefore contrary to public policy and ineffectual as a basis of title by estoppel or otherwise," defendant could not have been in good faith in its claim under the leases assigned to it.

The record discloses that the original transfers were made in 1909. Prior thereto majority rights had been conferred upon Robert Marshall by the district court of Creek county. Under the Oklahoma statute then in force, the marriage of a minor gave him full right to deal with his real estate. In 1910, Marshall brought suit to have the transfers canceled and to recover the property.

This case was tried in the district court, and judgment was rendered upholding the deed. No appeal was taken and the judgment became final. In 1913, a complete settlement was had between Marshall and his grantees whereby the surface of the land and one-fourth interest in the royalty was deeded back to Marshall, and the oil and gas leases were permitted to stand. This compromise settlement was presented to and approved by the county court. So far as the record discloses, this compromise settlement was in all good faith. The lessees proceeded to develop the land for oil and gas and Marshall received his one-fourth of the royalty interest up until he sold all of his interest in the land on October 13, 1916. It was not until July 12, 1915, that defendants became the owners of the leases. Their validity at that time was not being questioned by any one and was not thereafter questioned by Marshall until this action was commenced in January, 1918.

Defendant did not in any way participate in the procurement of the original deeds and contract from Marshall, nor did it participate in the compromise settlement had in 1913.

In Sapulpa Petroleum Co. v. McCray, 136 Okla. 269, 277 P. 589, it is said:

"The fact that a purchaser may err in judgment is not enough to impeach his good faith, but it exists when the purchase is made with an honest purpose, though the real title is not acquired."

Therein good faith is said to be the opposite of fraud and that its nonexistence must be established by proof. Good faith, as the term is used in the rule of law that a trespasser on the land of another who takes property therefrom shall be liable only for actual damages if the property taken was taken in good faith, means that the taking is without culpable negligence or a willful disregard of the rights of others and in the honest and reasonable belief that it was rightful. The term has been employed in the authorities on this subject to characterize the acts of one who, while

legally a wrongdoer, acted in the honest belief that his conduct was lawful. Whitney v. Huntington, 37 Minn. 197, 33 N. W. 561. It was there held that actual notice of the adverse claim of the true owner is not inconsistent with good faith on the part of the trespasser.

Under the record and the law we cannot say as a matter of law that defendant was not acting in good faith.

The rule is well established in this state that a person who in good faith enters into peaceable possession of land upon which he owns an oil and gas lease and produces oil and gas therefrom, and the lease is thereafter declared void, is entitled to the reasonable cost of producing the oil and gas in an action for an accounting by the landlord. Barnes v. Winona Oil Co., 83 Okla. 253, 200 P. 985; Minshall v. Berryhill, 83 Okla. 100, 205 P. 932; Woodworth v. Franklin, 85 Okla. 27, 204 P. 453.

It is further contended that if defendant be entitled to any development cost, then such offset should be limited to that proportionate capital investment in drilling six wells on the premises after the defendant came in possession thereof as the production during the period of time bears to the total production or life of the lease.

The contention cannot be sustained for two reasons:

First. The record shows that when defendant went into possession of the land 30 wells had been drilled thereon. Defendant drilled six wells thereon during the 15 months before plaintiff sold the land. Plaintiff's method of computing the production cost does not take into account the reasonable cost of the first 30 wells. The record does not show what they cost except the purchase price paid by defendant and this includes the leasehold interest. The cost of production per barrel could not be accurately ascertained without taking into consideration the reasonable cost of drilling all the wells if the total production of the land is to be taken as a basis.

Second. The record discloses that on October 13, 1916, Marshall sold all his interest in the land. The Flanagan Case decided that plaintiff's leases were invalid and that Flanagan became the owner of the wells when he purchased from Marshall. Marshall must have been the owner when he sold the land. Therefore, when he sold to Flanagan it must be presumed that he was paid the value of all the wells and had the full benefit of all the expenditures made by the defendant in developing the property for the purpose of producing oil as well as all expenditures for that purpose made by the persons from whom defendant purchased.

In the Flanagan Case the trial court allowed defendant no offset for development and operating expense. This court modified the judgment so as to allow actual cost of operating from October 13, 1916, to the date of the trial. Applying the rule there followed, the trial court was correct in allowing actual development and operating expenses and gross production tax paid and limiting same to the period between July 12, 1915, and October 13, 1916.

This expense being greater than the value of the oil produced, it follows that plaintiff was not entitled to recover anything, and there being nothing due plaintiff there was nothing upon which to compute interest, and his claim that he should have been allowed interest on the value of the oil taken if not allowed the highest market price of the oil, is without merit.

The judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. McNEILL, J., disqualified.

Note.—See under (1) 26 R. C. L. 1151; R. C. L. Perm. Supp. p. 5849.