CHAMPLIN REFINING CO. et al. v. ALADDIN PETROLEUM CORP. et al.

CHAMPLIN REFINING CO. v. OLDHAM et al.

Nos. 34087, 34086.   July 17, 1951.

Rehearing Denied Oct. 16, 1951.

Application for Leave to File Second Petition for Rehearing Denied Dec. 26, 1951.

*238 P. 2d 827.*

Nathan Scarritt, Enid, T. Murray Robinson and Leon Shipp, Oklahoma City, E. S. Champlin, Enid, and Russell B. McCabe, Oklahoma City (Robinson, Shipp & Robertson, Oklahoma City, of counsel), for plaintiffs in error.

Monnet, Hayes & Brown, Oklahoma City, for defendants in error, Aladdin Petroleum Corp., Esslinger-Misch Company, A. D. Krow, Lloyd F. Cooper, and Brown, Schlessman, Owen & Company.

Don Emery, Oklahoma City, and Rayburn L. Foster, Harry D. Turner, and D. E. Hodges, Bartlesville, for defendant in error Phillips Petroleum Company.

McCollum & McCollum, Pawnee, for defendants in error Eva A. Swearingen, Merlin L. Swearingen, Melvin F. Swearingen, Gladys O. Swearingen, Lora L. Swearingen, Jewell Swearingen Testerman, and Goldie Swearingen Dunworth.

Keaton, Wells, Johnston & Lytle, Oklahoma City, for defendants in error H. C. Donahue, H. L. Guild, R. D. Jones, John H. Mugler, Terminal Land Company of Oklahoma City, Mary C. Trigg, J. E. Trigg, as trustee for Jack Trigg, and Joe Dan Trigg, Roy G. Woods, A. M. Woods and C. A. Yoakam.

N. E. McNeill, Tulsa, for defendants in error L. D. Oldham, Nettie Oldham, W. L. Oldham, Dessie Oldham, Dora Webb, also known as Dora Oldham Webb, George M. Webb, Vera Amen, also known as Vera Oldham Amen, and Fred Amen.

Edward Howell, Oklahoma City, for defendants in error Sunray Oil Company.

Ray S. Fellows, George W. Cunningham, R. H. Wills, George H. Bowen, Forrest M. Darrough, John Rogers, Ralph W. Garrett, and Robert L. Imler, Tulsa, amici curiae.

JOHNSON, J. This case is here on appeals from orders of accounting (on mandate) which arose out of original cases Nos. 9640 and 9641 in the district court of Pawnee county, Oklahoma, consolidated for purposes of trial and on appeal to this court considered as consolidated actions by the State of Oklahoma, on relation of the Commissioners of the Land Office of the State of Oklahoma, as alleged owner, and Champlin Refining Company, as lessee, against Aladdin Petroleum Corporation et al., and against L. D. Oldham and others, to quiet title in the State of Oklahoma to river bed lands wherein defendants filed cross-actions, claiming ownership of the land involved in the river bed as riparian proprietors. From judgment for plaintiffs, the defendants appealed. The cause was reversed and remanded, with directions that in each case, on the question of title to the premises involved, the court render judgment for defendants according to their respective rights and take such further proceedings as the cases required not inconsistent with the terms of the mandate. See Aladdin Petroleum Corporation v. State ex rel. Commissioners of the Land Office, Oldham v. State ex rel., 200 Okla. 134, 191 P. 2d 224.

These cases have been consolidated in the brief and argument of counsel for all parties herein, and in this opinion we shall so consider them. These appeals are from judgments directing Champlin Refining Company to account to defendants in error for converted oil and gas at the highest market value between the conversion and trial. The judgments were rendered after the mandate heretofore mentioned was filed in the trial court.

Hereafter, we shall, for the sake of brevity, refer to plaintiff in error as Champlin, who is now the only real party in interest, and to the defendants in error as Aladdin defendants and Oldham defendants or as defendants.

There are two material issues presented. One is whether the trial court correctly directed Champlin to account to the mineral owners for the oil and gas taken from their land at the highest market price between the date of conversion and the judgment of the court. The other is whether Champlin was properly denied credit for the expense incurred in drilling a directional dry hole to a point under the Oldham property.

There is no controversy as to the essential facts, which are briefly as follows:

The State of Oklahoma, through the Commissioners of the Land Office, sold an oil and gas lease to Champlin Refining Company, covering a portion of the south half of the Arkansas river bed in Pawnee county, Oklahoma, on July 12, 1942, at public sale. The attorney for Champlin, the chief counsel for the Commissioners of the Land Office, and the Attorney General of the State of Oklahoma were all of the opinion that the State of Oklahoma had title to said property and also advised the Company. Champlin, relying on this advice and opinions of title, purchased the lease and drilled two producing wells thereon, costing $157,471.20. Thereafter, the trial court, complying with the mandate in the Aladdin case, supra, awarded one of the Champlin wells to Aladdin defendants, case No. 9640, and the other well to Phillips Petroleum Company et al., or Oldham defendants, case No. 9641.

Thereupon, Champlin delivered possession of the lease and producing wells thereon to Aladdin defendants and Oldham defendants and paid them the entire proceeds of the oil and gas produced by it from the two wells at the market value of oil and gas on date of production in the aggregate sum of $507,906.68, less expenses of development and operation in the sum of $197,676.39, making a total sum of $310,230.29, including the royalty, which Champlin paid to Aladdin and Oldham defendants.

However, after the mandate had been filed in the title litigation, Aladdin case, supra, the Aladdin and Oldham defendants filed pleadings in the trial court asking for monetary damages, and, for the first time, elected to sue for the highest market value of the oil and gas in an accounting which they contend is a suit for conversion. Approximately five years had elapsed since the date of the alleged conversion in the Aladdin case, and a year and seven months had elapsed after conversion was first alleged in the Oldham case.

There is no dispute as to Champlin's production figures nor as to the expenses of development and operation or amount of royalties paid to the Aladdin and Oldham defendants.

It was established that the market price of top grade oil at the time the first well was completed was $1.25 per barrel; the highest market price thereafter was $2.65 per barrel. The trial court ordered Champlin to pay to defendants the difference between the highest market price of the oil and the actual market price at the time of production. The trial court further found that Champlin was not guilty of such willful conduct as would deprive it of the right to recoup the expenses incurred by it in recovering the oil and gas and ordered recoupment accordingly. From this last phase of the order no exception or appeal was taken and it is now final.

The court further ordered that one of the directional branches of the second well was nonproducing and that Champlin should not be allowed to recoup the cost of this well.

Briefly summarized, this appeal is from the order which: (a) requires Champlin to pay to defendants the claim aggregating $268,723.32, the difference between the actual market price of the oil when produced or converted and the highest market value between the conversion and the verdict; (b) denies reimbursement to Champlin for the

costs of drilling the nonproducing branch of the directional producing well in the sum of $56,135.50.

It is contended by Champlin that defendants are not entitled to recover the highest market value between the time of conversion of the oil and trial or verdict, because they did not establish what they had commenced and prosecuted their action with reasonable diligence; and that the conversion was not willfully wrongful but was in good faith by reason of its bona fide lease from the State of Oklahoma whom it believed to be vested with title. On the other hand, it is contended by defendants that they did commence and prosecute their actions with reasonable diligence; that Champlin knew of their claims of title, and that under Title 23, §64, O.S. 1941, regardless of the willful wrongfulness or good faith of Champlin, they were entitled to the highest market value between the time of conversion of the oil and verdict.

Conversion is any distinct act or dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, Probst v. Bearman, 76 Okla. 71, 183 P. 886; Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 P. 1089, 23 L.R.A. (N.S.) 573.

But, in construing Title 23, §64, O.S. 1941, cited by defendants, we have said that in order to recover the highest market value between the time of conversion of personalty and verdict, owner must establish that he commenced and prosecuted his action with reasonable diligence; that 15 months unexplained delay in bringing action for wrongful conversion would preclude the owner from recovering highest market value of property between time of conversion and trial; that the measure of damages for oil produced by lessee taking possession in good faith under a void or invalid lease is value of oil less reasonable cost of production. Miller v. Tidal Oil Co., 161 Okla. 155, 17 P. 2d 967, 87 A.L.R. 811.

The record shows that defendants failed to exercise reasonable diligence in the prosecution of their action and are not entitled to the highest market value of the oil between the time of conversion and trial. Especially is this true in this case since Champlin acted in good faith.

There is nothing in the record to indicate Champlin's lack of good faith in taking peaceable possession of the property leased to it by the State. It is evident, however, that it erred in judgment as to the true or rightful ownership of the land, as it was thereafter determined that its lease was void because the State of Oklahoma had no title, but this does not impeach its "good faith" which unquestionably existed when it purchased the lease and developed it. Therefore, we conclude that the court erred in not applying the measure of damages announced in the Miller v. Tidal Oil Co. case, supra. There in syllabus pars. 2 and 3, we said:

"2. An unexplained delay of fifteen months after the cause of action accrued in bringing an action for wrongful conversion shows such want of reasonable diligence in commencing and prosecuting his action as will preclude plaintiff from recovering the highest market value of the property between the time of conversion and the trial.

"3. Where a person in good faith enters into peaceable possession of land upon which he owns an oil and gas lease and produces oil and gas therefrom, and thereafter said lease is declared void or invalid, the measure of damages to the landlord in an action for an accounting for the oil and gas produced from said premises by the lessee is the value of the oil at the surface or in pipe line or tanks wherever the same may be, less the reasonable cost of producing the same."

It is next contended by Champlin that the court erred in denying it reimbursement for the costs expended in drilling the nonproducing directional branch of the second well under the Oldham property.

We are of the opinion that the cost of drilling the unprofitable directional branch of a producing well is part of reasonable costs of development and production, and must be deducted in accounting. Bailey v. Texas-Pacific Coal & Oil Co., 168 Okla. 275, 32 P. 2d 709; Moody v. Wagner, 167 Okla. 99, 23 P. 2d 633.

The record discloses that after Champlin had obtained production in the river bed No. 1 well, permission was granted by the Corporation Commission to use the same surface location for the second well, because the high banks at the location where the second well was to be bottomed made the cost of building an additional pier prohibitive, and for this reason permission was granted it to drill a directional well, and it was so drilled to a bottom location which was advised by its geologist, but upon completion the well was dry and in a nonproductive portion of the formation.

Champlin then plugged back to within 300 feet of the surface of the nonproducing directional well and branched off from there with another directional hole which was bottomed only 250 feet west of the first branch and thereby obtained the second producing well. Thus it is seen that 300 feet of the nonproducing directional well, the unprofitable directional branch, became a part of the directional producing well.· The well was drilled in good faith and the cost thereof, being reasonable and necessary, is deductible in the action for an accounting. Moody v. Wagner, supra, and Miller v. Tidal Oil Co., supra.

The judgment is reversed, with directions for further proceedings in accord with the views herein expressed.

WELCH, CORN, GIBSON, and O'NEAL, JJ., concur. LUTTRELL, V.C.J., concurs in part and dissents in part. DAVISON, J., concurs in conclusion. HALLEY, J., dissents.

LUTTRELL, V.C.J. (dissenting in part). I dissent to that part of the opinion allowing Champlin costs expended in drilling the nonproductive well. The cost of the drilling of such well conferred no benefit upon the property, and added no value thereto. I am unable to see how Champlin is entitled to offset the cost of drilling a dry hole against the value of the oil and gas for which it is liable. In allowing the actual cost of drilling productive wells, such allowance is upon the theory that the property has been benefited to the extent of such drilling costs. Here the dry hole added nothing to the value, and, in my opinion, the cost thereof should not be allowed as an offset.