403 F.2d 351
 PAN AMERICAN PETROLEUM CORPORATION, Northeast Blanco
Development Corp., Blackwood & Nichols Company, a
partnership, El Paso Natural Gas Company, and Agnes M.
Lloyd, individually and as ancillary executrix of the Estate
of A. M. Lloyd, deceased, Appellants,
v.
Manuelita CANDELARIA, Mrs. J. D. Salazar, Maria C. Moreno,
Bennie C. Martinez, Genevieve Candelaria, Ana Maria
Candelaria, Augustina Baumer, Frank Candelaria, Maria Elena
Byron, Dolores A. Dandelaria, a minor by her guardian and
mother, Mary O. Candelaria, Mary O. Candelaria,
Individually, and Orville C. McCallister, Jr., Appellees.
 No. 9848.
 United States Court of Appeals Tenth Circuit.
 Nov. 12, 1968.
 
 Paul A. Cooter and Robert A. Johnson, Roswell, N.M. (Atwood & Malone, Roswell, N.M., Hardie, Grambling, Sims & Galatzan, and William J. Mounce, El Paso, Tex., Cooney & Briones, and James B. Cooney, Farmington, N.M., and McAfee, Dudley, Taft, Cates & Mark, and Kenneth E. McAfee, Oklahoma City, Okla., on the brief), for appellants.
 Orville C. McCallister, Jr. and James M. Durrett, Jr., of Rhodes, McCallister & Durrett, Albuquerque, N.M., for appellees.
 Before LEWIS, SETH and HICHEY, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 The appellees commenced this action against the appellants asserting that they were the owners of a tract of land (and the minerals underlying it) located in Rio Arriba County, New Mexico, and thereby challenging appellants' claim to the minerals. Appellees obtained a judgment which decreed that their title to the minerals was quieted against appellants. Appellees also recovered a money judgment representing the value of natural gas produced by appellants and attributed to the tract in question.
 
 
 2
 The litigation has arisen by reason of the fact that the entire original tract, owned by B. A. Candelaria during his lifetime, was bisected by the San Juan River which was the county line between Rio Arriba and San Juan Counties. Candelaria Died in 1926; the taxes on the land thereafter became delinquent, and the entire tract was sold for taxes to Mr. Saul A. Yager. The land had been assessed only in San Juan County by Mr. Candelaria, and the deeds at the tax sale in 1944 recited that the lands were in San Juan County. Thereafter Yager also returned the land for taxes only in San Juan County. No part of the land was rendered for taxes in Rio Arriba County until 1962 when the portion in that county was there returned by the heirs of Candelaria.
 
 
 3
 In 1947 Saul A. Yager filed a quiet title suit in the District Court of San Juan County based on his tax deeds, and in his complaint described all the lands by public land survey description and recited that they were located in San Juan County. The survey description used in the suit to quiet title included the entire tract and hence included land in both San Juan and Rio Arriba Counties. The record shows that B. A. Candelaria was not personally served with process (he had died in 1926), nor were any of the appellees herein served with process. No notice of lis pendens was filed in Rio Arriba County.
 
 
 4
 In 1948 Saul A. Yager executed two oil and gas leases to Wayne Moore describing all the lands by their public lands survey description and reciting that they were located in San Juan County. The appellants are successors in interest to lessee Wayne Moore, and undertook to develop the entire tract and adjoining lands for natural gas. As a part of this development the tract was included in a unit agreement. Also in 1953 they obtained from the New Mexico Oil Conservation Commission an order pooling this entire tract and other lands into four separate drilling and proration units. Wells were drilled on each of the units, and portions of the land involved herein were dedicated to each of the four wells. The total acreage dedicated to the four wells included all of the disputed lands, but none of the wells were physically located on such land.
 
 
 5
 The appellants have received an allowable (a permitted total gas production for a stated period of time) from the New Mexico Oil Conservation Commission for each of the four wells. This allowable was based upon the total acreage dedicated to each well. The allowable thus has been proportionately increased by the dedication to each well of the disputed Rio Arriba County acreage. If appellants had not dedicated the disputed acreage to each well, their allowable production would have been proportionately reduced. The trial court found that the four wells drilled by the appellants have drained gas from the Rio Arriba County lands involved herein, although none of the wells are located on the land itself.
 
 
 6
 On this appeal the appellants first assert that the appellees cannot collaterally attack the quiet title decree entered by the San Juan County District Court in 1947. This decree, as indicated above, described lands in both counties.
 
 
 7
 The general rule regarding collateral attacks of prior judgments is well established in New Mexico. The New Mexico Supreme Court in Atlantic Refining Co. v. Jones, 63 N.M. 326, 316 P.2d 557 (1957), quoting McDonald v. Padilla, 53 N.M. 116, 202 P.2d 970 (1948), said:
 
 
 8
 '* * * Every presumption not inconsistent with the record, is to be indulged in favor of the jurisdiction of courts of general jurisdiction whose judgments are collaterally attcked; and their judgments, though void for want of jurisdiction and would be so held on direct attack, cannot be questioned on that ground when attacked collaterally, unless the lack of jurisdiction appears affirmatively in the judgment roll.'
 
 
 9
 Thus the question becomes one of the jurisdiction of the San Juan County District Court over the subject matter-- the land in Rio Arriba County. If the court lacked such jurisdiction then its judgment may be collaterally attacked as to this land in a subsequent proceeding. The New Mexico Supreme Court in Jencks v. Goforth, 57 N.M. 627, 261 P.2d 655 (1953), stated the general rule. See also Bonds v. Joplin's Heirs, 64 N.M. 342, 328 P.2d 597 (1958).
 
 
 10
 In New Mexico actions to quiet title are statutory proceedings, and the act providing for such suits has from time to time made provision as to where they may be brought. In 1910, the Supreme Court of New Mexico in Jemez Land Co. v. Garcia, 15 N.M. 316, 107 P. 683, held that Comp.Laws 1897, section 2950 provided that any actions which affected an interest in land had to be brought in the county where the land or any portion of it was situated. Later in Atler v. Stolz, 38 N.M. 529, 37 P.2d 243 (1934), the court held that the statute requiring an action affecting an interest in land to be brought in the county where the land was situated was mandatory and that lack of jurisdiction (by bringing it elsewhere) could not be waived. This position was reaffirmed in Heath v. Gray, 58 N.M. 665, 274 P.2d 620 (1954), where the court also stated that in a quiet title action proper venue is jurisdictional. The court there cited the Atler and Jemez Land Co. cases. Also, see State ex rel. Board of County Com'rs of Harding County v. Board of County Commissioners, 59 N.M. 9, 277 P.2d 960 (1954); Lucus v. Ruckman, 59 N.M. 504, 287 P.2d 68 (1955); State ex rel. Hill v. District Court of Eighth Judicial District, 79 N.M. 33, 439 P.2d 551 (1968).
 
 
 11
 Thus there would seem to be no question that the New Mexico venue statute as to suits to quiet title is a jurisdictional one. The appellant however argues that the venue was proper in the 1947 quiet title suit.
 
 
 12
 The general venue statute in effect in 1947 (section 19-501 of the 1941 Compilation) provided:
 
 
 13
 'All civil actions commenced in the district courts shall be brought and shall be commenced in counties as follows, and not otherwise:
 
 
 14
 'Furth. (a). When lands or any interest in lands are the object of any suit in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situate.'
 
 
 15
 The statute referring specifically to quiet title actions (section 25-1301 of the 1941 Compilation) then provided:
 
 
 16
 'An action to determine and quiet the title of real property may be brought by anyone haing or claiming an interest therein, * * * whether in or out of possession of the same, against any person or persons, claiming title therto, or parcel or portion thereof, * * *. Any number of tracts of land may be embraced in the same action when they lie in the same county; whether claimed by different persons or not.'
 
 
 17
 Under the circumstances before us the statute relating specifically to actions to quiet title should be given primary consideration. This statute made no provision for the bringing of such a suit in one county covering land in another. This failure, plus the language in the act italicized above, leads to the conclusion that in such a statutory action the court's jurisdiction was limited to lands in the county where the action was brought.
 
 
 18
 After the suit in question was completed the quiet title statute was amended to replace the part italicized above with, '* * * and in instances where a tract of land title to which is sought to be quieted lies within more than one (1) county such action may be brought in any county in which part of said tract lies.' This change in 1951, of course, removed any question as to suits after its effective date. The appellant contends that the change only cleared up any misunderstanding but did not add to the jurisdiction the district court already enjoyed. The title to the 1951 act amending the section recited that it would 'permit' suits in one county for lands in several but this is not of great significance.[1] The legislature also in 1951 amended the general venue statute, quoted in part above, making a comparable change, but added a requirement that a lis pendens be filed in each county. This requirement was a significant change in the prescribed procedure.
 
 
 19
 There is some text authority and cases from other jurisdictions which hold that suits which affect interests in land located in two or more counties may be brought in any county in which a portion of the land is located. However, in view of the New Mexico statutes and the amendments, we agree with the interpretation placed on the act by the trial court. There are no New Mexico cases in point, and we certainly cannot say the trial court was clearly wrong. We will not under these circumstances disturb a trial court's application of local law. Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir. 1968); Adams v. Erickson, 394 F.2d 171 (10th Cir. 1968); Foundation Reserve Ins. Co. v. Kelly, 388 F.2d 528 (10th Cir. 1968). Thus we hold that the San Juan County District Court did not have jurisdiction in the 1947 quiet title suit over the portion of the tract which was located in Rio Arriba County.
 
 
 20
 On this appeal the appellants also argue that the appellees' claim was barred by the adverse possession of appellants under section 23-1-22, N.M.S.A. 1953.
 
 
 21
 It has long been the law of New Mexico that if any one of the elements necessary to constitute adverse possession, namely, actual, visible, exclusive, hostile, and continuous possession, is lacking, then no title by adverse possession can ripen. Jenkins v. Maxwell Land Grant Co.,15 N.M. 281, 107 P. 739 (1910), aff'd. 235 U.S. 691, 35 S.Ct. 205, 59 L.Ed. 427 (1914). Also see, Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896 (1937), and Flores v. Bruesselbach, 149 F.2d 616 (10th Cir. 1945). The adverse possession statute also specifically requires that the taxes be paid. It is also well established New Mexico law that one seeking to establish adverse possession must do so by clear and convincing evidence and that it cannot be left to mere inference or conjecture. Merrifield v. Buckner,supra; Marquez v. Padilla, 77 N.M. 620, 426 P.2d 593 (1967).
 
 
 22
 The record does not show any proof on the part of appellants that they have met all the requirements of the adverse possession statute nor of the New Mexico cases construing it. The trial court properly refused appellants' claim grounded on this theory, either using their predecessor Yager's claim or independently based on an asserted severance of the minerals.
 
 
 23
 The remaining points urged by the appelants relate to the money judgment portion of the trial court's decree. The trial court found that the appellants acted in good faith in drilling the wells, in the unitization of the lands, and in their actions relative to the allowables. The court found, as above indicated, that the tract in question was drained by the production of appellants, and that the allowables would not have been as large as they were had not the land in question been included in its computation. The trial court found:
 
 
 24
 'The defendants have been unjustly enriched and the plaintiffs have been damaged by the defendants in the amount of the full value of all production attributable to the lands involved herein, based upon the percentage of the plaintiffs' acreage dedicated to each of the four wells. * * *'
 
 
 25
 The trial court did not find that the appellees' interests had been pooled by the Oil Conservation Commission orders.
 
 
 26
 We agree with the trial court that the matter is one of the appellants being 'unjustly enriched,' using the term broadly, and this was at the expense of the appellees. The drainage and the attribution of acreage is clearly supported by the record. The amount of production sole, the unitization plan, and the pooling were based upon the action of the state's regulatory authority which was invoked by the appellants in their good faith assertion of a right to control the acreage. They cannot now take a contrary position, and the matter of whether New Mexico adheres to the rule of 'capture' or to some other theory is not involved.
 
 
 27
 Further as to the money judgment, the final argument of the appellants is that the trial court erred in not deducting from the recovery the cost of drilling a dry hold in the development of the unit in which the appellees' land was included, and in not deducting the costs of drilling a separate well which has not yet paid out under the agreement. The trial court allowed appellants to deduct from the value of gas attributable to the Rio Arriba County land appellees' proportionate share of the actual expenditures made by appellants in the 'development and operation of the wells.' The Trial court did not allow a deduction for the cost of an unsuccessful attempt to secure other production by the deepening of one of the four wells, nor to deduct the unrecovered portion of the gross development and operating costs of another of the four wells to which the acreage in question had been attributed. Other owners who were parties to the various unit agreements and whose acreage was attributed to these wells were obligated to bear their part of these costs, and appellants assert that appellees should do the same.
 
 
 28
 The appellants on this point cite Sawyer v. Mid-Continent Petroleum Corp., 236 F.2d 518 (10th Cir. 1956), where the plaintiff paid our monies which it was not obligated to do. This authority is not persuasive on the issue before us, but the appellants also cite Champlin Refining Co. v. Aladdin Petroleum Corp., 205 Okl. 524, 238 P.2d 827 (1951), where a good faith trespasser was allowed to deduct costs expended in drilling a non-productive well. However, in Greer v. Stanolind Oil & Gas Co., 200 F.2d 920 (10th Cir. 1952), this court said as to an attempted recovery of costs of drilling a dry hole:
 
 
 29
 'As far as we can ascertain, New Mexico has not yet had occasion to consider the plight of an innocent trespasser who enhanced the value of the occupied premises. See Alvarado Mining and Milling Company v. Warnock, 25 N.M. 694, 187 P. 542. However, it is unnecessary for us to anticipate the course it would take, for all courts apparently agree that permanent betterment or enhancement of value of the property trespassed is indispensable to the right of recovery of outlays or expenditures for operations on the premises by an innocent trespasser. And benefit to the rightful owner-- not cost to the trespasser is the test of improvement. 27 Am.Jur. 19 and 22, Improvements, Pages 273 and 276; Eagle Oil Corpration v. Cohasset Oil Corporation, supra (263 Mich. 371, 248 N.W. 840); Reimann v. Baum, supra (115 Utah 147, 203 P.2d 387); Williamson v. Jones, supra (43 W.Va. 562, 27 S.E. 411, 38 L.R.A. 694). And the burden is upon the trespasser to prove that his outlay did enhance the value of the property. Reimann v. Baum, supra; Frierson v. Modern Mutual Health and Accident Ins. Co., Tex.Civ.App., 172 S.W.2d 389.'
 
 
 30
 The appellants have not shown that the drilling of the dry hole (the deepening) in any way improved the land, and thus have not met the requirement prevailing in this jurisdiction.
 
 
 31
 As for deducting the unrecovered cost of drilling the well that has not yet paid out, it is sufficient to point out that the trial court based its award of relief on the theory of unjust enrichment, and to allow the appellants to deduct the costs of a well that has not yet paid out would be to treat appellees as a party to the agreements, and to consider them as bound by the forced pooling proceeding. The trial court correctly refused to so do because they were in fact not contracting parties, and it had no jurisdiction to force pool them itself.
 
 
 32
 We have considered the other issues raised by appellants and find no error.
 
 
 33
 Affirmed.
 
 
 
 [1]
 'An act to amend section 25-1301 of New Mexico Statutes (1941 Compilation) so as to permit quiet title suits to be brought embracing lands lying partly within more than one county in any county wherein part of the land is situated.' N.M.Laws 1951, ch. 96