L. A. EDWARDS, Jr., an Individual, et al., Appellees,

v.

Charles R. LACHMAN et al., Appellants.

No. 44435.

Supreme Court of Oklahoma.

April 30, 1974.

Rehearing Denied May 6, 1975.

Lee B. Thompson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Patrick D. Sullivan, Leach, Sullivan, Sullivan & Green, Duncan, Earl A. Brown, Jr., Anderson, Brown, Orn, Pressler & Jones, Houston, Tex., for appellees, L. A. Edwards, Jr., and others.

George E. Erickson Jr., Cosgrove, Webb & Oman, Topeka, Kan., John S. Miller, Tulsa, for Amerada Hess Corp.

Robert J. Emery, Lytle, Soule & Emery, Oklahoma City, George N. Otey, Otey & Evans, Ardmore, J. D. DeBois and O. L. Peck Jr., DeBois & Peck, Duncan, for appellants.

IRWIN, Justice:

Appellants, herein referred to as defendants, drilled an oil and gas well at such an angle of deviation from the vertical that it bottomed in and produced hydrocarbons from formations underlying adjacent property. The drilling of this well into the adjacent property constituted a sub-surface trespass.

Defendants owned the working interest in the trespassing well and this well's surface location is on a 40 acre tract, known as the Fuqua tract. The adjacent trespassed property is a 40 acre tract located north of the Fuqua tract and is known as the Graham tract. The Fuqua and Graham tracts were subject to 40 acre spacing orders of the State Corporation Commission. Defendants started drilling operations on their Fuqua well in June, 1966, and during the course of drilling, the well deviated to such an extent that it entered the Graham tract. Production was obtained in September, 1966. The well was drilled to a total depth of 11,200 feet and was dually produced from two separate formations, the Dornick Hills Sand and the Springer Sand. At the time the well penetrated these sands, the trespass had already occurred and the well was bottomed in and produced hydrocarbons from the Graham tract.

Appellees (except Rock Island Oil and Refining Co., and Service Gas Products Co., who purchased the hydrocarbons produced) either owned the royalty interest in the Graham tract or owned the working interest in a well drilled on the Graham tract in June, 1967, and completed in August, 1967. This well was drilled to a total depth of 8,077 feet and penetrated only the Dornick Hills Sand and produced only from the Dornick Hills Sand.

The appellee-owners, referred to as plaintiffs, commenced proceedings against defendants and sought injunctive relief and an accounting for all the hydrocarbons produced by defendants' Fuqua well.

The trial court, inter alia, ordered defendants to plug their well back to the property line, and rendered judgment in favor of plaintiffs for the sum of $826,950.46. This sum represents the value of the production received by defendants from the Fuqua well, plus interest, but does not include the gross production taxes paid by defendants and defendants' lifting costs in the sum of $29,000.00. The trial court disallowed defendants any credit for the costs in drilling and completing the Fuqua well, amounting to approximately $276,000.00; royalty payments made by defendants, amounting to approximately $72,000.00; and other credits and allowances to which defendants contend they were entitled. Defendants appealed.

The trial court's judgment was based on specific Findings of Fact and Conclusions of Law. The material findings are as follows: that the manner in which defendants drilled the Fuqua well constituted a negligent, imprudent and improper drilling procedure; that the Graham well "drilled by plaintiffs upon their land and which is now producing, is sufficient to effectively produce all the oil and gas in and under said tract, * * * and the drilling of defendants' well [the Fuqua well] was of no benefit to said plaintiffs which would entitle the defendants to recover any part of the cost of drilling and completing said well."

The material conclusions are: that "defendants had wrongfully and unlawfully trespassed upon, in and under plaintiffs' land and had wrongfully and unlawfully converted the hydrocarbons therefrom for their own use and benefit"; and "that the well drilled by defendants conferred no benefit upon plaintiffs or their property and defendants are not entitled to recover

any part of the cost of drilling, equipping or completing the same."

We will first consider defendants' contention that the trial court erred in refusing to allow them credit for the cost [approximately $276,000.00] of drilling and completing the Fuqua well. Defendants contend there was no proof and no finding by the trial court that they acted in bad faith or with evil intent, or the equivalent thereof, in the drilling and completing the Fuqua well, and in the absence thereof it was error to disallow them credit for such expenses.

Plaintiffs placed defendants' "good faith" in issue in its second amended petition. Therein, plaintiffs alleged that the drilling and completion of the Fuqua well was done on behalf of the defendants in bad faith in that such drilling was conducted in a grossly negligent manner, and defendants knew or should have known that said well was being drilled so that it would trespass upon plaintiffs' land, or said defendants intentionally allowed said well to deviate from the perpendicular so as to trespass on plaintiffs' land.

Although defendants' drilling of the Fuqua well may have constituted negligent, imprudent and improper drilling procedures as found by the trial court, such does not necessarily mean defendants were "bad faith" trespassers when they drilled and completed the Fuqua well.

■ Good faith is the opposite of fraud, and its existence or nonexistence must be established by proof. Sapulpa Petroleum Co. v. McCray, 136 Okl. 269, 277 P. 589. In Miller v. Tidal Oil Co., 161 Okl. 155, 17 P.2d 967, 87 A.L.R. 811, we said:

" * * * Good faith, as the term is used in the rule of law that a trespasser on the land of another who takes property therefrom shall be liable only for actual damages if the property taken was taken in good faith, means that the taking is without culpable negligence or a willful disregard of the rights of others and in the honest and reasonable belief that it was rightful. The term has been employed in the authorities on this subject to characterize the acts of one who, while legally a wrongdoer, acted in the honest belief that his conduct was lawful. * * *."

■ Paraphrasing the language employed in Dilworth v. Fortier (1964), Okl., 405 P.2d 38, in order to prove that a trespasser has acted in "bad faith" the proof must show some element of fraud, malice or oppression, or the trespasser's actions must be shown to be actuated by or accompanied with some evil intent, or must be the result of gross negligence—such disregard of another's rights—as is deemed equivalent of such intent.

Considering the findings and conclusions of the trial court in connection with our decisional law, we find that the trial court did not allow defendants their costs in drilling and completing the Fuqua well because of "bad faith" on defendants' part, but because "the well drilled by defendants conferred no benefits upon plaintiffs or their property."

The trial court's findings and conclusions, which we find did not constitute an adjudication that defendants acted in bad faith, are not against the clear weight of the evidence unless there is merit to another "circumstance" which plaintiffs contend conclusively shows "bad faith" on the part of defendants.

The "circumstance" relied upon by plaintiffs is that defendants obtained a directional survey on their well in April 1967, which disclosed that the Fuqua well constituted a sub-surface trespass and was bottomed in and was producing hydrocarbons from plaintiffs' land. Defendants did not divulge this information to plaintiffs and plaintiffs drilled their well on the Graham tract after the survey was completed.

■ If defendants were not guilty of "bad faith" when they drilled the Fuqua well, their subsequent knowledge that they were trespassers did not convert them into "bad faith" trespassers ipso facto. See Sapulpa Petroleum Co. v. McCray, supra. In other words, the fact that defendants

subsequently found that their Fuqua well trespassed upon plaintiffs' land did not retroactively make defendants "bad faith" trespassers when they drilled and completed the Fuqua well. The record will not justify a finding by this Court on appeal that defendants' acts constituted "bad faith" when they drilled and completed the Fuqua well. However, as will be pointed out later, defendants did not continue to be "good faith" trespassers under the facts presented after they obtained the directional survey and found their well was bottomed in and producing hydrocarbons from plaintiffs' property.

In Dilworth v. Fortier (1964), Okl., 405 P.2d 38, we held:

"An action to recover damages for the unlawful production and taking of oil and gas against a lessee who does not have a valid and subsisting oil and gas lease on the premises, is in the nature of a tort and to permit the rightful owner of the oil and gas rights to recover the value of the production at the surface or in pipe line or tanks wherever the same may be, without deducting therefrom a reasonable cost of developing and producing the same, would be analogous to permitting the recovery of exemplary damages against the lessee. To entitle such recovery, the proof must show some element of fraud, malice, or oppression, or the lessee's actions must be shown to be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent of such intent."

Dilworth, and cases of similar import, disclose that the "good faith" trespassers conferred benefits upon the rightful owners of the oil and gas rights by their drilling operations and production of minerals. We see no reason why the Dilworth case would not be applicable where a sub-surface trespass has been committed by the drilling and completing of an oil and gas well and we hold the same rule would be applicable. However, if the drilling and completion of defendants' Fuqua well conferred no benefits upon plaintiffs or their property, would the rule in Dilworth be applicable, i.e., would defendants be entitled to credit for their reasonable costs for drilling and completing the Fuqua well if such well conferred no benefits upon plaintiffs or their property?

The trial court, in holding that defendants would not be entitled to credit for the drilling and completion costs because defendants' well conferred no benefits upon plaintiffs or their property, but did allow defendants credit for the gross production taxes paid and the lifting costs, apparently followed Carter Oil Company v. McCasland, 207 F.2d 728, which arose in Oklahoma and was decided by the Circuit Court of Appeals, 10th Circuit.

Prior to the promulgation of 207 F.2d 728, the Circuit Court of Appeals in Carter Oil Company v. McCasland, 10 Cir., 190 F.2d 887, determined the rights of the parties under a lease assigned by Carter to McCasland. Carter had assigned to McCasland its rights in certain leases insofar as they covered producing horizons above 4,000 feet. This producing horizon was encountered in some places above 4,000 feet and in others below that depth. McCasland drilled wells on the acreage and encountered the oil horizon above 4,000 feet. In two wells drilled by Carter on the same acreage, the particular horizon was encountered below 4,000 feet. Carter contended the assignment did not cover the horizon below 4,000 feet. The court held that the assignment by Carter precluded it from producing from the same horizon and was guilty of conversion with respect to the two wells it drilled and ordered an accounting and an accounting was had.

In 207 F.2d 728, the accounting phase of the action was considered. The only issue presented was the amount of costs that Carter would be allowed for drilling, completing and producing the two wells. Carter contended it was entitled to credit not only for the lifting costs but also for its drilling and completion costs. It was con-

ceded that Carter was an innocent trespasser.

In disposing of Carter's contention that it was entitled to its drilling and completion costs and disallowing it credit for such costs, the court said:

"Carter cites a number of cases to sustain its contention that it should be allowed the drilling and development expenses as well as the lifting costs of the oil. No attempt will be made to analyze these cases. It is sufficient to say that the facts therein distinguish them from the facts in this case. In each of them was present an element of benefit to the owner other than the lifting cost. Many of the wells were taken over by the owner, who then continued producing them. Others were produced until the oil was exhausted. In others the drilling of a well tended to prove the acreage which had not been proven theretofore. Obviously all these factors were beneficial to the owner in addition to the lifting costs of the oil.

"But here no such factors are present. McCasland had drilled and operated its own wells from which it was producing oil from this horizon. It could produce all the oil from the horizon through the wells it then had. Drilling these two wells gave it no information concerning its acreage it did not already possess. It asserted no claim or interest in the wells or the equipment therein. As far as it was concerned, the wells could be closed down and appellee would suffer no loss."

The Circuit Court of Appeals concluded that the only benefit to McCasland was the lifting costs incurred by Carter and that was all the costs Carter was entitled to.

■ It is apparent that Carter [207 F.2d 728] modifies the rule announced in Dilworth, supra, to the extent that an innocent trespasser, who produces the hydrocarbons of a rightful owner of the oil and gas rights, is not entitled to his drilling and completion costs if by such drilling and completion, no benefits are conferred upon the rightful owner. It appears that if the innocent trespasser conferred benefits upon the rightful owner of the oil and gas rights, such trespasser would be entitled to credit for the benefits conferred. In our opinion, the Circuit Court of Appeal's modification of the Dilworth rule is premised on sound, equitable principles.

In Greer v. Stanolind Oil and Gas Co., 10 Cir., 200 F.2d 920, it is stated that " * * * all courts apparently agree that permanent betterment or enhancement of value of the property trespassed is indispensable to the rights of recovery of outlays or expenditures on the premises by an innocent trespasser. And benefit to the rightful owner—not cost to the trespasser is the test for improvement—27 Am.Jur. sections 19 and 22, Improvements, pages 273 and 276."

In Eagle Oil Corporation v. Cohassett Oil Corporation, 263 Mich. 371, 248 N.W. 840, which involved a trespass by the drilling of an oil well, the Supreme Court of Michigan held that compensation for improvements made by an innocent trespasser is measured, not by the reasonable cost of the improvements, but by the benefits to the owner of the land.

■ We hold that defendants would be entitled to credit for their costs in drilling and completing the Fuqua well to the extent that such drilling and completion benefitted plaintiffs or their property as herein explained.

Since the trial court determined that the drilling and completion of defendants' Fuqua well conferred no benefits upon plaintiffs or their property, the next issue is whether this determination is against the clear weight of the evidence. It appears this determination may have been based on the trial court's finding that the well drilled by plaintiffs upon their land was sufficient to effectively produce all the oil and gas in and under their property.

Insofar as pertinent here, there are two separate formations under the Graham tract, the Dornick Hills Sand and the Springer Sand. The Springer Sand is below the Dornick Hills Sand. Defendants'

well dually produced from both sands. Plaintiffs' well was drilled to only the Dornick Hills Sand, and produced from only that sand and did not drill to nor did it produce from the Springer Sand. Plaintiffs do not argue that their well, as drilled, could produce from the Springer Sand.

Although plaintiffs' well may have been sufficient to effectively produce all the oil and gas under the Graham tract, if it had been drilled to both formations, the fact remains that plaintiffs' well was not drilled to both formations but to only one formation, and that was the Dornick Hills Sand.

There is evidence tending to establish that approximately 70% of defendants' total production from the Fuqua well was produced from the Dornick Hills Sand and approximately 30% of defendants' total production was produced from the Springer Sand. In other words, 30% of defendants' total production was produced from a formation which plaintiffs' well had not penetrated and had not produced.

We hold the trial court erred in its findings that the well drilled by plaintiffs upon their land was sufficient to effectively produce all the oil and gas in and under their land; and erred in its conclusions that defendants' well conferred no benefits upon plaintiffs or their property. We further hold that defendants were entitled to credit for their costs of drilling, completing and equipping the Fuqua well to the extent that such drilling, completing and equipping conferred benefits upon plaintiffs or their property, as herein explained.

Defendants argue that the uncontradicted evidence discloses that 53 per cent of the hydrocarbons produced by them through the Fuqua well came from the 40 acre Fuqua tract and that only 47 per cent of the production was obtained from the Graham tract even though the Fuqua well was bottomed in the Graham tract. Defendants contend that since they were innocent trespassers, plaintiffs would be entitled to actual damages only and not exemplary damages; and to allow plaintiffs credit for all of the hydrocarbons produced would be awarding plaintiffs exemplary damages as plaintiffs actual damages were only 47 per cent of the total production.

Defendants, in effect, contend that in innocent trespass actions involving the production of hydrocarbons, the Ownership in Place Rule should be applied as distinguished from the Rule of Capture.

In Wright v. Carter Oil Company, 97 Okl. 46, 223 P. 835, we held:

"Oil and gas belong to the owner of the land and are a part of it so long as they are on it, or in it, and subject to his control, but when they escape and go into other land or come under another's control through the natural reservoir, the title of the former owner is gone. In other words, property in the oil and gas does not become absolute until they are reduced to actual possession by being brought to the surface and then controlled. The right to reduce oil and gas to possession is a valuable property right."

In Carter Oil Company v. State, 205 Okl. 541, 240 P.2d 787, we held that the law of capture under which oil and gas belongs to the one who reduces it to possession obtains in Oklahoma except as may be modified under laws enacted under the police power, such as proration and spacing statutes, and zoning ordinances.

There are no statutes, orders or ordinances presented in the case at bar wherein the production of hydrocarbons from either the Fuqua or the Graham tracts would be considered as production from the other tract or that the owners of the hydrocarbons of either would share in the production obtained from the other tract. We can not sustain defendants' contention that plaintiffs are entitled to only 47 per cent of the total production even if only 47 per cent of the total production was from the Graham tract and 53 per cent was drained from the Fuqua tract.

Defendants contend that the amount of any recovery by plaintiffs should have been discounted to its present value. To

sustain their contention, defendants allude to the fact that plaintiffs had only one allowable under the order of the Corporation Commission; that to not discount plaintiffs' recovery, would, in effect, be allowing plaintiffs two allowables; and had defendants not produced the hydrocarbons, under the allowables set by the Corporation Commission, it would be years before plaintiffs could have produced the oil defendants produced.

Defendants, and not plaintiffs, were responsible for the production from the Fuqua well. Although defendants may have been "good faith" trespassers when they drilled and completed the Fuqua well, after the directional survey was run in April, 1967, and prior to the time plaintiffs drilled the Graham well, defendants, intentionally and knowingly, produced and converted plaintiffs' property. They did nothing to rectify the subsurface trespass nor did they attempt to make any arrangements for further operations that would be compatible with, or for the protection of, plaintiffs' rights. Under these circumstances, defendants may not be considered "good faith" trespassers after they acquired knowledge by means of the directional survey that their well constituted a sub-surface trespass upon the plaintiffs' property. Under these circumstances, the case of Barnes v. Winona Oil Company, 83 Okl. 253, 200 P. 985, wherein we considered the distinction between further development of oil and gas properties and further development of ore or timber after notice of adverse claim has no application.

23 O.S.1971, § 64, provides that the detriment caused by the wrongful conversion of personal property is presumed to be:

"(1) the value of the property at the time of the conversion with the interest from that time, * * *."

■ Assuming, arguendo, there might be some merit to defendants' contention had the double allowables from the Dornick Hills Sand been produced during a period of time when defendants had no knowledge of such facts, the fact remains that defendants knew they were producing hydrocarbons from a well bottomed in and under plaintiffs' land. We cannot sustain defendants' contention that plaintiffs' recovery should have been discounted to the present value.

■ The trial court awarded interest on the production at the rate of six per cent (6%) per annum from the first day of the month following the month in which such production occurred. Defendants contend that they should not be charged with interest prior to the date of judgment.

In Hamco Oil and Drilling Company v. Ervin, Okl., 354 P.2d 442, we said that in this jurisdiction, in an action for the conversion of property, the plaintiff's measure of damages is the fair market value of the property converted at the time and place of conversion, together with interest. Sec. 64, supra, was cited. We find no error in the trial court's award of interest.

■ Defendants' next contention relates to their payment of royalty to the royalty owners under the Fuqua tract and the failure of plaintiffs to join such royalty owners as party defendants. The trial court refused to allow credit to defendants for the royalty paid to their royalty owners. Defendants argue this was error because they are in effect being charged for production payments that they never received.

The royalty owners under the Fuqua tract were not responsible for drilling the Fuqua well and did not unlawfully produce the hydrocarbons rightfully belonging to plaintiffs. Plaintiffs were not responsible for paying the royalty owners under the Fuqua tract. Those royalty owners were entitled to their proportionate share of production rightfully produced from under the Fuqua tract and were not entitled to their proportionate share of the production wrongfully produced from plaintiffs' land. Defendants wrongfully produced plaintiffs' minerals and plaintiffs were entitled to an accounting covering all the hydrocarbons produced and defendants were not entitled to an allowance for the payments made to their royalty owners. See American Trad-

ing and Production Corporation v. Phillips Petroleum Company (Tex.Civ.App.), 449 S.W.2d 794.

■ The trial court's judgment is affirmed in every respect except the trial court erred in its conclusions that plaintiffs' well was sufficient to produce all the oil and gas in and under the Graham tract; and that the drilling of defendants' Fuqua well conferred no benefits upon plaintiffs or their property. The cause is remanded to the trial court to determine the extent that defendants' well, and the operation thereof, conferred benefits upon plaintiffs or their property, measured, not by the reasonable cost of the improvements, but by the benefits conferred upon plaintiffs or their property, prior to April, 1967, when defendants obtained the directional survey. In this connection, it appears that all of defendants' expenses for drilling and completing their Fuqua well were incurred prior to the time defendants obtained the directional survey. The correctness of the trial court's adjudication that defendants were entitled to all their lifting costs and gross production taxes paid, is not an issue here because plaintiffs, by cross-appeal, did not challenge defendants' entitlement thereto. Therefore, we do not herein consider or determine whether defendants would have been entitled to their lifting costs incurred and gross production taxes paid after they obtained the directional survey, but we do hold they are not entitled to any credit for their cost of drilling and completing the Fuqua well after they obtained the directional survey and continued operations under the circumstances presented.

In determining the extent of the benefits conferred upon plaintiffs or their property, the trial court should consider, at least as a partial guideline, what would and would not constitute benefits within the purview of Carter Oil Company v. McCasland, supra, and any other pertinent factors not specifically mentioned therein. As an example, some of the factors that would be material are: Did the drilling of the Fu-

qua well tend to prove plaintiffs' land or impart any information to plaintiffs that would constitute benefits to plaintiffs?; did defendants' production from the Springer Sand, the sand plaintiffs' well did not penetrate and from which it did not produce, confer benefits upon plaintiffs or their property?; and what would the costs have been for plaintiffs to have drilled and completed their well to the Springer Sand?

Judgment affirmed except as above set forth. Reversed in part for further proceedings.

All the Justices concur.