surgeon of acknowledged professional standing, skill and experience, on behalf of the defendant; and that there may be present the surgeon or physician of the choice of the plaintiff.

If the plaintiff shall refuse to submit to such examination, under the terms proposed, it would seem to the court that the plaintiff is not entitled to the benefit of this jurisdiction for the trial of his case, and the action will thereupon be dismissed.

The expense of the examination provided for shall be borne by the defendant.

All of this matter of examination is founded upon Rule 35, and its provisions shall be open for the benefit of both parties.

**RUNKLE et, Plaintiffs, v. MUSKINGUM COAL COMPANY, An Ohio Corporation, Defendant.**

Common Pleas Court, Muskingum County.

No. 39271. Decided December 6, 1955.

Carrington T. Marshall, Columbus, Graham, Graham, Gottlieb & Johnston, Zanesville, for plaintiffs.
Porter, Stanley, Treffinger & Platt, Edmund D. Doyle, Columbus, Joseph W. McNerney, Zanesville, for defendant.

## OPINION

By CROSSLAND, J:—

The pleadings, consisting of a first cause of action of the petition and amendment thereto, answer in two defenses and cross-petition, reply to each defense and answer to cross-petition, wholly concern coal mined by defendant out of a certain 138.55 acres in the southeast quarter of section 14, township 14, range 13, Bearfield township, Perry County, Ohio, owned by plaintiffs, the dispute and controversy between the parties growing out of their respective views and claims concerning the application thereto of a paragraph of a written contract of March 20, 1944, which reads as follows:

"It is further agreed that if any other acreage is found to be owned by first party in any of the sections included in Schedule A of Perry County and Schedule B of Morgan County, first party desires to sell and second party agrees to purchase, the same and said acreage shall be added hereto and paid for at the rate of Forty Dollars ($40.00) per acre, payable in installments as aforesaid."

Plaintiffs are successors in full interest of the former ownership of the coal in question by a former Ohio corporation, The Eastern Hocking Coal Company, which latter company was party with defendant to said March 20, 1944, contract.

The substance of plaintiffs' claim is that defendant has owned and operated a coal mine on lands nearby and adjoining the disputed acres, that for some months before November 17, 1951, defendant wrongfully mined and removed at least forty acres of coal from said 138.55 acre tract, of approximately 200,000 tons, of the approximate value of $720,000, of which plaintiffs first learned about November 10, 1951, for which they pray judgment in the sum of $720,000.

Defendant's answer claims that it "mined 23.40 acres of coal from the northerly end" of the described tracts of coal, refers to the written contract of March 20, 1944, for defendant's purchase of 69 separate parcels of coal, of 5,478.24 acres, in Bearfield township, Perry and Morgan counties, constituting the Misco mine, quotes paragraph 8 thereof as above stated, claims that the twenty-second parcel of Schedule A of Perry County conveyed coal in said section 14 and that by virtue of said paragraph 8 plaintiffs' predecessor in title agreed to sell defendant the disputed and controverted two parcels of coal of 138.55 acres, at $40 an acre, which Eastern Hocking refused to do; that its said refusal damaged defendant to the amount of any damages otherwise due plaintiffs and has further damaged defendant by consequent inaccessibility to other coal it bought under said contract, in the sum of $50,000, which it asks.

Plaintiffs' reply claims that much more than 23.40 acres of coal was mined, that it did not agree to sell defendant said 138.55 acres of coal, that in an action by defendant in the Franklin County, Ohio, Courts, upon the same averments as in defendant's second defense herein, by the judgment of the Franklin County Court of Appeals, affirmed by the Ohio Supreme Court, it was adjudged that defendant herein was not entitled to recover said 138.55 acres. Plaintiffs' answer to defendant's cross-petition claims that defendant did not intend to mine other coal through entries in said 138.55 acres but abandoned its mining operations therein because the long underground haul entailed a loss to it.

Interrogatories attached to plaintiffs' petition were answered by defendant to the effect that (1) 23.40 acres of coal were mined and removed from said 138.55 acres; (2) access is not available to make a survey; (3) the thickness of the No. 6 coal vein where mined was 42 inches; (4) the beginning and end of such mining was November 1, 1950—September 11, 1951; (5) all coal was washed and processed before sale, making it impossible to state the price per ton at which defendant sold run of mine coal within above dates.

Plaintiffs' witness placed the acres of coal mined by defendant at 24.21.

The case was carefully, well and thoroughly prepared and tried on both sides, and exhaustively briefed by counsel for both sides following trial. In addition, there were two pre-trial conferences, with pre-trial briefs submitted by both sides between conferences, that were

studied and considered by the Court, together with the Court's independent research, examination and study of authorities, and all of which was discussed with counsel by the Court at the second pre-trial conference, at which tentative conclusions concerning pleadings, issues, and governing law were arrived at and announced by the Court for the convenience and helpfulness of counsel. In addition to a careful reading and study of post trial briefs, the Court has reread fully the transcript of all trial testimony and examined and re-examined the twenty-four exhibits offered and received in evidence and believes that it is thoroughly conversant with all the same.

It is evident to the Court from the pleadings that plaintiffs rely upon their ownership of the coal in question in charging defendant with its wrongful taking and removal and further rely upon the final determination of previous Franklin County litigation between the parties as favorably concluding the premise of their within action.

It is equally evident that defendant not only defends upon a claim of right but also imports therefrom, in reliance thereon, good faith on its part in mining and removing the said coal.

The foregoing was the construction put upon the pleadings by the Court at the time of pre-trial conferences, at and during trial, and the known basis on which the cause was tried and submitted to the Court with agreed and express waiver of a jury.

It was this Court's announced view before trial that the question of coal ownership was resolved in and by the Franklin County case and that view was not seriously questioned or challenged in or by the trial of the case; nor was the equal view of the Court that a question of good faith on the part of defendant was also before the Court in the trial of the case seriously questioned or challenged by plaintiffs.

It was the further announced view of this Court at that time that while defendant was entitled to consideration of a defense of good faith on its part to the charge of wrongful taking, it was barred from any affirmative claim for damages, pursuant to its cross-petition, on the principle of res judicata in the application of the results of the previous litigation between the parties concerning the same subject matter of contract rights with respect to the particular 138.55 acre tract from which the coal involved herein was extracted.

The cause was tried and submitted, in the Court's contemplation, in accordance with its views of the issues as announced and outlined by it before trial and that is the way it stands before the Court at this time upon the evidence adduced and received at the trial of the case, and is the base from which the Court will proceed in its consideration and determination of the issues.

Without taking the time or space to detail the authorities leading to the Court's view that the Franklin County case settled and disposed of any question at the time of trial of plaintiffs' then existing unquestioned ownership of the particular 138.55 acre tract, reference will be made briefly to two Ohio cases of the Court's own research on the matter.

"An action for specific performance is a bar to a subsequent action for damages alleged to have been sustained through failure of the

defendant to carry out the contract which forms the basis of the first suit." **(Lee et al. v. Thoma, 1 Oh Ap 384.)**

In the concluding paragraph of the opinion of the Court of Appeals for Hamilton county, the Court said:

"Plaintiffs elected in filing their first suit to compel specific performance, and having made their election, they must rely upon that and can not now abandon that suit or bring an action for damages for breach of the same contract."

The above case was expressly affirmed, without opinion, by the Supreme Court of Ohio, in **91 Oh St 444.**

The well reasoned, well written opinion of Judge Hart in the case of **Norwood v. McDonald et al., 142 Oh St 299,** decided December 8, 1943, with particular reference to the very informative and enlightening discussion on pages 305, 306, 309 and 311, and syllabi 1 and 4 of the court, quite clearly demonstrate and determine the view of law cognizable in this case on that particular proposition, said syllabi reading as follows:

"1. A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privy with them."

"4. To determine whether a second action is based upon the same cause of action as that litigated in a former action claimed to be a bar to the second action under the doctrine of res judicata, the primary tests are the identity of investitive facts creating the right of action in each case; the identity of the evidence necessary to sustain each action; and the accrual of the alleged rights of action at the same time."

Thus, upon the evidence of the fact of plaintiffs' established ownership of the coal mined by defendant and its removal by defendant from plaintiffs' coal acreage owned by them in said 138.55 acre tract, a prima facie case is made and a presumption of wrongful taking on the part of defendant necessarily arises therefrom and continues unless and until successfully rebutted by persuasive evidence of defendant's innocence and good faith. The latter is not a matter of profession, either as a statement of conclusion in defensive pleading or as testimony upon trial, but is an issue of ultimate fact as to whether or not there was a bona fide belief of right in the action taken and complained of, to be arrived at by the trier of the facts from all the relevant and material evidence adduced in the case. The latter concerns all the dealings, communications, actions and conduct of the defendant throughout the period from March 20, 1944, execution of the contract to the inception of boring by defendant in August, 1948 and extraction of coal between November 1, 1950 and September 11, 1951.

In considering and weighing all the pertinent evidence and in undertaking therefrom to arrive at an ultimate finding of fact in this essential, important and decisive respect, the nub and crux of the whole case, it is helpful to take account of the legal premise of punitive damages, the predicate of plaintiffs' claim of large damages, as a legal measurement of the kind of damages sought and then weigh the evi-

dence upon the scales of law in order to see whether it over or under weighs the criterion of punitive damages as most recently fully enunciated by our Ohio Supreme Court.

The case of *Saberton v. Greenwald*, 146 Oh St 414, decided April 3, 1946, has been relied on by this Court as its authority in charging punitive damages, where that issue was before a jury for its finding and determination, prior to its deliberation upon the evidence, as its rule of law in definition and delineation of the term.

The substance of the holding in the above case and the essence of it is found in the use of the quotation by Judge Turner from volume 13, O. Jur. beginning near the bottom of page 427 of the opinion and continuing to the middle of page 428.

"In 13 O. Jur., 238, Section 139, it is said:

" 'By no means does every legal wrong entitle the injured party to recover exemplary damages; by far the larger portion of actionable wrongs form no basis whatever for the recovery of such damages. The Ohio rule allowing a recovery of punitive or exemplary damages is, as the statement of the rule implies, predicated upon the circumstance that the wrong complained of involves ingredients of fraud, malice or insult, or a wanton and reckless disregard of the plaintiff's rights. Exemplary damages are a punishment, and should only attach to a wrongful intention, and it is frequently stated broadly that malice or insult is a necessary element in order to warrant a recovery thereof. That such damages are allowable only in cases of that kind is settled beyond dispute. As pointed out in an early case, the principle of permitting damages beyond naked compensation is for example, and the punishment of the guilty party for the wicked, corrupt and malignant motive and design which prompted him to the wrongful act.' "

This Court does not intend to discuss every detail of the evidence bearing on the question of whether or not defendant is shown to have entertained and acted upon a bona fide belief of right in mining and removing plaintiffs' coal but shall relate in substance its view and findings in broad outline from all the evidence in that regard.

The controversial paragraph 8 of the original contract contains language that, in and of itself, is easily and entirely susceptible of the meaning contended for by defendant. Without other evidence it appears to support defendant's contention as to his right of contract to purchase the 138.55 acre tract of coal. There is no express exception, either in said paragraph 8 or elsewhere, that denies or withholds said tract from the mutual covenant and undertaking of the first party's desire to sell or the second party's agreement to purchase "any other acreage" "found to be owned by first party in any of the sections included in Schedule A of Perry County." In and of itself it would seem to this Court to have been an obligation imposed upon either party at the will of the other, upon the consideration which supported the original contract itself. While the decision of the Franklin County Court of Appeals is controlling in so far as concerns the law of the action by defendant for specific performance of contract in the Franklin County Common Pleas Court, it no more concludes the issue of a belief of right on the part of defendant than does the decision of Judge Harter in the Court of Common Pleas

predicate it. This Court does not presume to try to pass judgment on the final outcome of that case. It was finally disposed of by the Supreme Court of Ohio on the ground of laches and the law of the case was finally settled by the Franklin County Court of Appeals and is not an issuable matter in this case. The fact, however, that the Common Pleas Court in that case decided, in accordance with the contention of defendant herein, that he was entitled to a conveyance of the 138.55 acre tract under the March 20, 1944, contract, does contribute to that extent in shedding some light on whether or not previously he may have been actuated in bona fidely believing that he had a contract right to the coal in said tract and was owed a duty on the part of plaintiffs' predecessor in title to respond thereto. The judgment and decision of the Franklin County Common Pleas Court in the former case has the effect only of reflecting judicial concurrence with defendant's contention of right, in now weighing the question of his belief of right at the time of his first boring and later extraction, and is only a commentary in this case as to the apparent meaning of the contract language upon which defendant relied. It does not prove or establish good faith by defendant in what he previously did any more than the decision of the Court of Appeals disproves or disestablishes it. Essentially, the proof itself lies within the time preceding defendant's entry, mining and removal. That case finally decided that the defendant was not entitled to the coal. This case presents the further question as to whether or not the defendant bonafidely believed that he was entitled to the coal.

The Court views the evidence prospectively from the date of the March 20, 1944, contract and the successive events, communications and actions that ensued thereafter, to and including the removal and disposition of plaintiffs' coal.

There is no doubt but that if defendant believed he was entitled by contract to the 138.55 acres of coal, it would have been additional to that already conveyed in escrow and would require payment of additional money in accordance with the contract terms for acreage actually conveyed by Eastern Hocking, and letters and telephone calls of and to its counsel would naturally pertain to a desire and effort on defendant's part to purchase the same. In short, defendant's efforts through counsel to acquire this coal by purchase were consistent with and not repugnant to any claim of right to do so, which he may have entertained or asserted.

It is equally clear to the Court that defendant sought and Eastern Hocking declined sale of the 138.55 acre tract. There was nothing covert or surreptitious about defendant seeking conveyance of that tract. It did not get it but it did want it, asked for it and claimed it—but not in time or not rightfully, according to respective views of counsel as how the action for specific performance of contract terminated. In the course of seeking acquisition of the disputed acres defendant ·unquestionably called and consulted its counsel at that time, who advised its corporate officers that said acreage was covered and included under the terms of the contract. No legal action. by defendant was threatened or

begun either then or shortly thereafter. However, effort was made to acquire said coal amicably, without consideration of resort to court, but with defendant believing and being advised by counsel that it was entitled to buy the coal, from the time the question apparently was first raised by defendant with its counsel in late 1945 or early 1946, preceding the mailing of said counsel's letter of January 22, 1946, plaintiff's exhibit No. 4. It was shortly after final consultation with and counsel's favorable advise to defendant's officers that the August, 1948, boring was made and at just about the latter time that said counsel's letter of September 3, 1948, plaintiffs' exhibit No. 6, was written, in which opening reference is made to

"140 Acres in Section 14 (which is south of the Misco entry and which Mr. Jones claims you contracted to sell to him)"
and closing reference is made to:

"bearing in mind that our friend Jones still claims that you have contracted to sell him the 140 acres above referred to."

This Court heard defendant's counsel testify that he advised defendant that it was entitled to the 138.55 acre tract under the terms of its contract and heard defendant's president testify that it had received and acted upon and pursuant to such advice, and is convinced of the truth and fact as so testified by each of said witnesses.

There is no question of the legal impropriety of defendant proceeding to mine and remove plaintiffs' coal without first obtaining a legal conveyance but there is also no question of doubt in the Court's mind of defendant's belief that Eastern Hocking was legally obligated to sell and good reason, tenable ground and sound legal advice for so believing and reasonable anticipation that a deed therefor would come later by either the persuasion or procurement of counsel. While defendant was mistaken, under all the facts and circumstances in evidence the Court is persuaded that it was honestly mistaken and that it was not seeking and did not obtain the coal by stealth or under pretense of any kind, but in a bona fide belief of right and in reliance upon subsequent legal conveyance pursuant to existing contract.

The vast difference in this kind of case between the calculation of punitive and compensatory damages is arresting and provocative of one's utterly innermost self-questioning, to the end that the evidence be fully and faithfully understood and considered, correctly interpreted, properly evaluated and impartially and unreservedly stated, and a review in higher courts is assumed and welcomed. In many respects it is much easier to submit a case of two extreme positions that are irreconcilable to a jury than to constitute one's self as a trier and finder of facts as well as a determinant of the applicable and governing law. The Court has given its very best, though limited, talent to the task at hand, and has striven as best it can to find the facts and determine and apply the law, but makes no claim of infallibility as to either.

Adverting to the rule for punitive damages in Ohio, as stated in Saberton v. Greenwald, supra, of wrong involving ingredients of fraud, malice, or insult, or a wanton and reckless disregard of rights, punishment for a wrongful intention, or for wicked, corrupt, and malignant

motive and design prompting the commission of a wrongful act, the Court fails to find any evidence of a wrongful intention on the part of the defendant or of wicked, corrupt or malignant motivation or design on its part, or that it acted in wanton or reckless disregard of plaintiffs' rights. On the contrary, the Court affirmatively finds that the defendant was relying explicitly and expressly upon contract and a belief of right predicated thereon and that although subsequently shown mistaken as to its rights by later court pronouncement, it was meantime genuinely seeking only to assert its own and not to disregard Eastern Hocking's rights.

Specifically, the Court further finds that the presumption of wrongful taking from the fact of plaintiffs' ownership alone is fully and effectively rebutted and clearly and convincingly overcome by other evidence, so that as a conclusion of law plaintiffs, while entitled to full compensation for all the coal mined and removed by defendant mistakenly in legal respect, are not entitled to exact unconscionable punishment therefor.

Both law and good conscience prompt the Court to repudiate the paucity and inadequacy of any possible inference from which it is sought to draw an implication of malicious, malevolent, or malignant purpose, with the effect of unjustly rewarding and enriching successful litigants in an earlier action in grotesque distortion of any possible right of plaintiffs of which the evidence herein is reasonably susceptible. That would be injustice of the grossest kind, compounded to the nth degree, and there is no conceivable premise from the evidence in this case for exploiting fancifully or fantastically claims of solely compensatory value.

Neither will the Court seriously indulge patently absurd and manifestly ridiculous testimony of astronomical compensatory values offered by each of the plaintiffs personally. The most that was claimed by plaintiffs in their verified petition of June 29, 1954, regarding fair market value of all their immediately adjoining 2000 acres of coal was that it was worth $100 an acre, not as allegedly damaged but before the deprivation of full use of the 138.55 acre tract, which latter is claimed to have reduced former value by one-half or from $100 to $50 an acre, as set forth in plaintiffs' dismissed second cause of action.

The Court agrees with plaintiffs' contention that an amount of damages no more than the going-market price of coal intentionally and willingly sold is, in a sense, penalizing the owners who did not choose to sell. A difference here, of course, is that the contract transaction between the parties, giving rise to a dispute and controversy concerning it and affecting the coal in question, directly accounted for the mining and removal and was also incidental to the consummation and execution of a quarter million dollar sale by Eastern Hocking to defendant.

The only other answer the Court can provide, responsive to the evidence, is that when defendant entered the 138.55 acre tract, it thereby constructively took possession of all the coal therein and that while all but 24.21 acres of coal was neither mined nor removed, nevertheless, inasmuch as defendant is liable only for the value of the coal in place, when it exercised its asserted right to enter upon the area embracing the coal in place, of which it mined and removed a part, it thereby

constructively took possession of all that it desired to mine of the coal in said tract just as fully as if it had previously obtained and received a deed of conveyance therefor, which it had sought and asked for and presumably was willing and expecting to pay for. The only difference is that it abandoned the rest of the coal not mined and removed and must pay the price which the 138.55 acres of coal was fairly and reasonably worth at the time it began to mine and remove some of same on November 1, 1950, which this Court finds did not then exceed $50 an acre, the usual and customary unit of computation in that vicinity for many years.

Accordingly, judgment is given plaintiffs for $6,927.50, with legal interest thereon of 6% per annum from November 1, 1950, a total to date of $9,047.32. Defendant to pay costs.

Exceptions will be noted in behalf of both parties and Journal Entry may be prepared by defendant's counsel, containing therein findings of fact and conclusions of law as herein set forth, submitted to plaintiffs' counsel for approval, and then to the Court for its approval for filing.