Opinion by
Mr. Justice Moore.*
Plaintiffs in error will be referred to as Johnson. Defendants in error will be referred to in abbreviated form, i.e., Pavich, La Plata and St. Paul. In the amended complaint filed in the district court by Pavich it was alleged that she was the owner and entitled to possession of a certain tract of land which she described by metes and bounds. In this description no reference was made to the center of the Animas river. She alleged that, to her damage, Johnson had trespassed upon her land and removed sand and gravel.
Johnson by answer alleged ownership of all the property which was described by Pavich in her complaint, *384 and denied removing sand and gravel from any property belonging to her. He filed a third party complaint against La Plata and St. Paul in which it was alleged that La Plata had negligently omitted entries properly belonging in the chain of title from an abstract of title upon which Johnson relied in acquiring the property involved in the litigation. The prayer of the third party complaint was that Johnson be granted judgment against La Plata and St. Paul, “* * * for all sums which may be adjudged against these defendants [Johnson] in favor of the plaintiff [Pavich] * * The third party defendants, La Plata and St. Paul, denied the allegations contained in Johnson’s complaint against them.
The case was tried to the court without a jury and the court decided without objection from any party that the case should be disposed of in two phases, or separate hearings. The first issue of fact to be determined would be the location of the boundary line separating the Johnson property on the north and west from the Pavich property on the south and east of that boundary. After a three-day trial upon this issue the trial court entered a written decree on April 16, 1964, by which the boundary line was established. The dispute with regard thereto arises from references in deeds appearing in the chain of title of both Johnson and Pavich in which the “center of the channel of the Animas river” is used to mark the boundary between them.
Prior to'December 1, 1906, one Joseph Freed Jr. owned all the disputed property. A predecessor in title to Pavich received a deed from Freed on December 1, 1906 conveying specific property in Section 15 “lying South and East of the center of the channel of the Animas river as it now runs.” Thereafter, on October 2, 1907, Freed conveyed other specifically described property in Section 15 lying “* * * North and West of the center of the channel of the Animas river as said river ran the first day of December 1906.”
Various conveyances were thereafter .recorded in *385 which similar references to the “center of the channel of the Animas river” were made. There was ample evidence to sustain the trial court’s findings that the true boundary of the property was the center of the “old channel” of 1917, which “had always been considered to be the boundary since December 1906.” This channel was the southerly channel or old channel of the river as it appeared in 1951. However another channel to the north had been carrying water of the river since 1928.
The predecessor of Pavich purchased the area lying between the north and south channels by deed dated October 26, 1954, in which the land in Section 15 was described as that,
“* * * lying south of the center of the Animas River as it now flows through said lands, intending hereby to convey all that part of said tracts lying south of the center of the Animas River as it now flows through said lands, and lying north and west of the center of the channel of the Animas River as said river ran through said lands on the 1st day of December 1906.”
It is agreed by the parties that the channel of the river as shown by exhibits depicting the scene after 1957 does not define any boundaries under the last above description, for the reason that the channel as shown in the exhibits came into being as a result of an avulsion in 1957.
The court at the conclusion of the trial upon the issue of ownership of the disputed ground and the location of the true boundary resolved all issues of fact and law in favor of Pavich and against Johnson. No objections were made to this portion of the proceedings in the trial court and there is nothing with regard thereto appearing in the record before this court except the “Order and Judgment” entered by the trial court on April 16, 1964.
The trial of the second phase of the case began May 18, 1965, and continued for three full days. At the conclusion of the trial the court detailed findings and entered judgment in favor of Pavich against Johnson *386 in the amount of $19,992.04. The third party complaint of Johnson against La Plata and St. Paul was dismissed.
The trial court said that the issues to be tried following the determination of the location of the true boundary were:
“1. Did Defendant remove sand, gravel and other minerals from Plaintiff’s land?
“2. If such sand, gravel and minerals were removed in trespass by defendant, was such removal a result of wilful trespass or an innocent mistake?
“3. What is the amount of damages to which Plaintiff is entitled because of removal of sand, gravel and minerals in trespass?
“4. Which of the defendants are legally liable for any damages found to be due Plaintiff?
The trial court found specifically that Johnson “* * * deliberately trespassed on the property of plaintiff and that it is therefore not entitled to set off the cost of extraction against the value of the material taken.”
With reference to the third party complaint and the answer thereto, the trial court pointed out that, prior to the purchase of the property, Johnson had knowledge of a pending lawsuit involving title between plaintiff and one Heisen. Johnson procured an abstract of title from La Plata in order to examine the possible involvement of the land about to be purchased. The court found that:
<:* * •* Through the negligence of defendant La Plata Abstract Company certain instruments were left out of said abstract which would have put plaintiff on notice of the validity of plaintiff’s title. Defendants Johnson and Johnson Gravel Products Company relied on this abstract until sometime in April 1962 when their • attorney discovered the missing instruments and called them to the attention of said Abstract Company. The Court finds that thereafter no reliance was placed by defendant Johnson and Johnson Gravel Products Company on said abstract. In view of the disposition made *387 herein of plaintiff’s claim against defendant Johnson and defendant Johnson Gravel Products Company, the Court finds that no liability exists between 3rd party defendant La Plata Abstract Company and its Company, 3rd party defendant, St. Paul Fire & Marine Insurance Company for the damages owed by these two defendants to plaintiff.”
The court did not award any damages to Pavich for sand, gravel or minerals which might have been taken by Johnson prior to April 1962, and ruled that the trespasses committed thereafter were made with full knowledge of the lawful claims of Pavich.
As grounds for reversal of the judgment Johnson presents argument under four captions as follows:
“A. The trial court erred in its findings that Johnson ever removed any materials from Pavich’s property.
“B. The trial court erred in its findings that Johnson willfully trespassed on the lands of Pavich and in not allowing Johnson a deduction of the cost of removing and improving the materials.
“C. That the court erred in assigning as value of materials removed from plaintiff’s land a sum in excess of the amount pleaded by plaintiff and prayed for in plaintiff’s complaint.
“D. That the court erred in its judgment in finding that abstract company and St. Paul Fire and Marine had no liability to Johnson on Johnson’s third party plaintiff’s complaint.”
Each of the points relied upon as grounds for reversal involves consideration of the question as to whether there is competent evidence in the record to support the several conclusions made by the trial court. Numerous exhibits were introduced in evidence. In many particulars the oral testimony was conflicting. It consumes 350 typewritten pages of the record before us. Our study of the evidence leads to the conclusion that with reference to each of the four points argued by Johnson’s counsel there was adequate competent evi *388 dence to sustain the judgment. Nothing presented to the court in oral argument, or contained in the briefs, has been shown to warrant a reversal of the judgment.
The judgment accordingly is affirmed.
Mr. Justice Day, Mr. Justice Kelley and Mr. Justice Lee concur.

 Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.