**MINERALS & CHEMICALS PHILIPP CORPORATION, Plaintiff-Appellee-Cross-Appellant,**

v.

**The MILWHITE CO., Inc., Defendant-Appellant-Cross-Appellee.**

**No. 27124.**

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1969.

---

3. " 'Inmate's Version', p. 3—Cumulative Case Summary, State of California Department of Corrections". (Respondent's Ex. No. 1.)

Carl R. Pennington, Jr., Wilfred C. Varn, Ervin, Pennington, Varn & Jacobs, Tallahassee, Fla., for appellant.

Charles S. Ausley, Harry L. Michaels, Ausley, Ausley, McMullen, Michaels, McGehee & Carothers, Tallahassee, Fla., Richard J. Gardner, Quincy, Fla., for appellee.

Before BELL and GOLDBERG, Circuit Judges, and ATKINS, District Judge.

ATKINS, District Judge:

It is contrary to human experience for a landowner to sit idly by and watch an adjacent landowner innocently trespass and mine some 50,000 tons of clay over a period of more than a year. The legal consequences of such behaviour are resolved by this opinion.

The Milwhite Company, the innocent trespasser, appeals from a remittitur-reduced jury verdict in favor of Minerals & Chemicals Philipp Corporation, the landowner whose clay was mined. Pursuant to a complex set of interrogatories the jury found that the trespass by appellant extended from January 6, 1964 to May 24, 1965 and was at all times non-willful. The jury further found that the appellee became aware of the trespass on April 30, 1964 and that all clay was removed subsequent to that time. The jury then found that 50,586.-73 tons of clay were removed and awarded plaintiff $48,057.39 in damages. The trial judge reduced the damages to $35,000. The parties are in agreement as to the facts. The appeal arises from

the alternative legal arguments that appellee was estopped from recovery or that the damages awarded were improperly computed. Not to be outdone the appellee has cross-appealed the entry of the remittitur. Appellant has moved to dismiss the cross-appeal. For reasons set forth below we reverse on the measure of damages and dismiss the cross appeal.

### Estoppel

The doctrine of estoppel as applied in Florida is stated in Aetna Casualty and Surety Company v. Simpson, 128 So.2d 420 (D.C.A.Fla.1961) at page 425.

> The essentials of equitable estoppel are (1) words and admissions, or conduct, acts and acquiescence, or all combined causing another person to believe in the existence of a certain state of things; (2) in which the person so speaking, admitting, acting and acquiescing did so wilfully, culpably, or negligently, and (3) by which such other person is or may be induced to act so as to change his own previous position injuriously. The parties sought to be estopped must be guilty of conduct which amounts to * * * concealment of material facts at a time when he has knowledge, actual or constructive of the real facts.

The case of Richards v. Dodge, 150 So.2d 477 (D.C.A.Fla.1963) at page 481 equates the acts necessary to create an estoppel with

> [the] failure to speak when under some duty to speak.

Milwhite contends that the appellee had such a duty when it became aware that Milwhite was on its land and mining. It is certain that appellee's failure to speak reinforced Milwhite's belief that it was mining properly. However, the record does not reflect willfulness on the part of appellee. Neither does it reflect that the silence actively induced Milwhite to change its position.

While this court is bound to follow Florida law a decision from a state where mining operations are common is instructive. Jacobs v. Perry, 135 Colo. 550, 313 P.2d 1008 (1957) involved a mining trespass and stated that there is no rule by which a mere trespasser may estop a rightful land owner from asserting title in a court of law or equity. Regardless of Milwhite's innocence in this case, it was no more than a trespasser and we hold that the doctrine of estoppel does not apply to bar complete recovery by appellee.

### Damages

The jury was charged that it should value the clay taken as of the time when appellant committed acts inconsistent with appellee's ownership. Presumably applying this standard the jury assessed damages at $.95 per ton of clay. This rate was within several pennies of appellee's average profit during the period involved. It was similarly close to appellant's "mouth of the mine" [1] value per ton of the clay taken. The trial court concluded that the verdict was based on the average profit and entered a remittitur. In the order the judge incorrectly equated the mouth of the mine value theory with the "in situ" theory. The latter provides that a product is valued as it sits in its natural state. The rationale stated for the amount of the remittitur was the subtraction of hauling expenses and the resulting verdict of $35,000 was stated to be the value of the clay involved in situ or as it left the mouth of the mine.

The sole Florida case dealing with wrongful removal of an earth product is Pettigrew v. W & H Development Company, 122 So.2d 813, 84 A.L.R.2d 787 (D.C.A.1960). It obliquely holds that damages for such removal by an innocent trespasser is the value of the property at the time and place of conversion. This holding cites two Florida cases involving innocent conversion of timber which support a mouth of the mine type

---

1. "Mouth of the mine" means that the mined product is valued as it stands at the mine outlet. The expenses of bringing the product to the surface are thus added to the value.

measure of damages. Wright v. Skinner, 34 Fla. 453, 16 So. 335 (1894); West Yellow Pine v. Stephens, 80 Fla. 298, 86 So. 241 (1920). We reject this measure in the case sub judice.

▇ In the absence of any cases, Florida or otherwise, involving an innocent trespasser and a landowner who silently observes such trespass and subsequent mining operations, we hold that damages are to be assessed at the royalty value of the mined product. The practical effect of using the royalty method, or its equivalent, value in situ, is to give the innocent trespasser credit for the mining expenses and the profits resulting from the conversion. There is ample authority for this method in cases involving innocent trespassers from states in which mining is common. Kycoga Land Co. v. Kentucky River Coal Corporation, 110 F.2d 894 (6th Cir., 1940); Bostic v. Whited, 198 Va. 237, 93 S.E.2d 334 (Va., 1956). We find that the appellee's course of inaction in this case virtually requires the use of the royalty method.[2] Its conduct was tantamount to the creation of an implied contract.

The evidence reflects that the royalty value of the clay mined during the period of the trespass was $.25 per ton. The former judgment is set aside and it is ordered that judgment be entered for appellee in the amount of $12,646.68 with interest at the lawful rate from March 17, 1967.

▇ There remains the issue of appellee's cross-appeal. It is established that appellee accepted the remittitur. This Court made it unequivocally clear in Movible Offshore Company v. Ousley, 346 F.2d 870 (1965) that once a remittitur has been accepted it may not later be appealed unless the acceptance was made under protest. No element of protest is present in the acceptance in this case. The motion to dismiss the cross-appeal is granted.

Reversed.

2. It is interesting to note that when appellee first notified Milwhite of the trespass damages were sought at the rate of $.25 per ton.