**ALASKA PLACER COMPANY,**
Appellant,

v.

**Richard E. LEE and Phyllis Lee,**
Appellees.

No. 2427.

Supreme Court of Alaska.

July 23, 1976.

Catherine A. Chandler and Charles E. Cole, Fairbanks, for appellant.

Lyle R. Carlson, Fairbanks, for appellees.

Before BOOCHEVER, C. J., RABINOWITZ, and BURKE, JJ., and DIMOND, J. Pro Tem.

## OPINION

BOOCHEVER, Chief Justice.

This case is before us on appeal for the third time. It arises out of the Lee's possession after October 5, 1965 of 15 tin mining claims located near Nome, Alaska. The present appeal raises issues concerning the burden of proving a trespass to be in good faith, the requirements for a finding of good faith, and the appropriate measure of damages. Additionally, it is contended that the trial court abused its discretion by awarding attorney's fees to the Lees.

In 1960, Alaska Placer Co., the owner of the mining claims, had granted the Lees a lease with option to buy the claims. Dissatisfied with the lack of production under the original contract, Alaska Placer entered into a written sales agreement with the Lees in March 1965. The purchase price was $400,000.00, $2,500.00 payable on execution of the agreement, $5,000.00 from smelter receipts from the 1965 production and the balance in annual payments equal to 15 per cent of the annual net mineral production of tin concentrates.

Under this agreement, the Lees were to work the mines to their full capacity, with "sufficient working crew and equipment" defined as requiring:

Equipment and skilled workmen required to work said property in a miner-like manner so as to deliver at least 1,200 tons of ore-bearing material to the washing plant on said property each production day.

If the Lees failed to perform their part of the agreement, Alaska Placer could serve a notice of forfeiture, after which the Lees had 30 days to remedy their failure or surrender possession of the premises.

After signing the agreement, the Lees began mining operations in 1965. Between July and October, only 3,500 tons of material were delivered to the washing plant.

On October 5, 1965, Alaska Placer sent a telegram to the Lees giving notice of forfeiture of their interest in the mining claims "for non-performance of minimum requirements among other reasons". The Lees failed to vacate the claims, and in March 1966, Alaska Placer brought an action to enjoin the Lees from mining the claims. The Lees contended that the agreement did not require that they deliver 1,200 tons of ore-bearing material per day but merely that they have on hand men and equipment capable of such production. On December 15, 1966, the superior court denied the injunctive relief in an oral decision in favor of the Lees' position. Alaska Placer thereupon appealed that decision to this court.

In *Alaska Placer Co. v. Lee*, 455 P.2d 218 (Alaska 1969), we held that the notice of forfeiture by Alaska Placer was justified under the contract and reversed the judgment of the superior court. We also held that the Lees' "failure to vacate the mining claims after forfeiture of their interest made them trespassers", citing Restatement (Second) of Torts, § 158 (1965).[1] The case was remanded for fur-

---

1. *Alaska Placer Co. v. Lee, supra,* 455 P.2d at 229. Restatement (Second) of Torts § 158 (1965) provides in part:

    One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

    .    .    .    .    .    .

    (b) *remains on the land* .  .  .  .

    Comment 1, at 280 states:

    If the possessor of land has consented to the actor's presence on the land, his failure to leave after the expiration of the license is a trespass.  .  .  .

ther proceedings consistent with the views expressed in our opinion.[2]

The complaint in the action now before us on appeal was filed by the Lees on November 30, 1970, to recover the sum of $75,943.39, which Alaska Placer demanded and received from the Wah Chang Corporation for a shipment of tin concentrates mined from the claims by the Lees after their receipt of the forfeiture notice in 1965. In its answer and counterclaim, Alaska Placer asserted that it was entitled to retain the monies received from Wah Chang; that it was entitled to an accounting from the Lees for all ore mined and recovered from the claims; and that it should have judgment against the Lees for the full value, without deduction or offset, of all ore removed from the claim by the Lees after October 5, 1965.

The case at bar deals only with the quality of the Lees' trespass, and issue not litigated in the two prior cases between the parties. The measure of recovery against the Lees for removal of tin concentrates during the 1966, 1967 and 1968 mining seasons is determined by whether they were "good faith" trespassers or whether they were "willful" trespassers.

■ When a trespasser removes minerals from the land of another, there are two generally accepted rules of damages: a "mild" rule for good faith trespassers and a "harsh" rule for willful trespassers.[3] The mild rule provides that a good faith trespasser must pay the owner damages based either on a royalty rate or on the market value of the minerals less cost of extraction. Thus, the nonwillful trespasser may receive credit for the mining expenses involved in the conversion.[4]

■ The harsh rule for intentional trespassers operates as a form of punitive damages, with the goal of deterrence. The owner may recover the market value of the converted minerals without offset or deduction for the trespasser's mining costs.[5]

---

2. On July 14, 1969, Alaska Placer filed a proposed judgment on the mandate of this court. Subsequently, this proposed judgment was superseded by a second proposed judgment filed by Alaska Placer on July 28, 1969, which added a new paragraph:

> (4) (Lees) shall render account to (Alaska Placer) for all ore and minerals extracted by (Lees) from said claim subsequent to October 6, 1965, and that (Alaska Placer) is entitled to receive from those parties such smelting grounds as may be due on account of said ore having been delivered to them for smelting by (Lees).

The Lees filed a motion for relief from judgment, seeking to delete paragraph (4). This motion was granted and Alaska Placer appealed to this court a second time, *Alaska Placer Company v. Lee*, 502 P.2d 128 (1972). There we upheld the Lees' contention that Alaska Placer was "not entitled to the accounting because it failed either to plead the matter or to litigate the issue". 502 P. 2d at 132. We also found that the relevant issue as to the smelting grounds provision, the good or bad faith of the Lees, "was never raised either at trial or on appeal". 502 P. 2d at 133.

On November 12, 1970, the superior court entered an Order Amending Judgment on Mandate which deleted paragraph (4) referred to above. Pursuant to that order, Alaska Placer was entitled to costs and attorney's fees of $2,645.05 for trial and appeal.

3. *United States v. Wyoming*, 331 U.S. 440, 458, 67 S.Ct. 1319, 1328, 91 L.Ed. 1590, 1600 (1947); Anno., 21 A.L.R.2d 380, 383–93.

4. *Minerals & Chemicals Philipp Corp. v. Milwhite Co.*, 414 F.2d 428, 431 (5th Cir. 1969); *United States v. Marin Rock & Asphalt Co.*, 296 F.Supp. 1213 (C.D.Cal.1969); *Even Odds, Inc. v. Nielson*, 22 Utah 2d 49, 448 P.2d 709 (1968); Anno., 21 A.L.R.2d 380, 383–90.

5. *National Lead Co. v. Magnet Cove Barium Corp.*, 231 F.Supp. 208 (W.D.Ark.1964); *Whittaker v. Otto*, 248 Cal.App.2d 666, 56 Cal.Rptr. 836 (1967); Anno., 21 A.L.R.2d 380, 391–93.

The rationale behind the different damage rules for trespass was discussed by one court in *Athens & Pomeroy Coal & Land Co. v. Tracy*, 22 Ohio App. 21, 153 N.E. 240, 244 (1925):

> The difference in the measure of damages allowed for an innocent and willful conversion lies in public policy. As a strict matter of right inter partes, the just claims of one wronged by an unlawful conversion of his goods are satisfied when such owner is fully compensated therefor. If the owner, however, were to be limited to compensation, there would be no inducement for

■ "Good faith", in the context of trespass on mineral claims, has been defined as an "honest and reasonable belief" that the taking is rightful;[6] and "honest intention" not to take "unconscientious advantage of another."[7] The United States Supreme Court has stated that good faith in this context is "something more than the trespasser's assertion of a colorable claim to the converted minerals."[8] In the instant case, the trial court found that the Lees were good faith trespassers[9] and applied the "mild" rule of damages.

### I. BURDEN OF PROOF

■ As a matter of law, the burden of proof is on the trespasser, here the Lees, to show that the trespass was not willful.[10] Because the record was unclear as to where the burden of proof was placed on this issue, we remanded the case to the trial court requesting clarification of this matter.[11] In response, the trial judge

the evil-minded conversioner to refrain from trespass. The wrongdoer might, for instance, in a coal mine encroach upon his neighbor, take away his coal, and reap a handsome profit, after paying the owner merely compensatory damages. To prevent this, the rule is applied that the willful trespasser must reap no advantage through his wrongdoing, not strictly as a matter of right to the property owner, but as a deterrent to wrongdoers. *It is nothing more or less than the application of a fixed rule for exemplary damages imposed as a matter of public policy.* (Emphasis added)

6. *Miller v. Tidal Oil Co.*, 161 Okl. 155, 17 P.2d 967, 970 (1933).

7. *Sapulpa Petroleum Co. v. McCray*, 136 Okl. 269, 277 P. 589, 590 (1929).

8. *United States v. Wyoming, supra*, 331 U.S. at 458, 67 S.Ct. at 1328, 91 L.Ed. at 1600 (footnote omitted).

9. The trial court entered the following findings and conclusions among others:

FINDING NO. 8: [Lees] returned to the . . . claims soon after August 16, 1966 to resume mining of these claims and they had been previously advised by their attorneys that they had a right to continue mining these claims which belonged to the defendant, Alaska Placer Company. . .

FINDING NO. 21: . . . [Lees] were good faith trespassers subsequent to October 6, 1965, and during the 1966, 1967, and 1968 mining seasons.

CONCLUSION NO. 5: That subsequent to October 6, 1965, plaintiffs continued to mine the said Cape Creek claims owned by defendant, relying on (1) the advice of their attorneys indicating their right to continue mining and (2) the decision of the Superior Court, Second Judicial District, which held that plaintiffs had not committed any trespass and that ALASKA

PLACER COMPANY was not entitled to forfeit the agreement for sale of the fifteen mining claims in question.

CONCLUSION NO. 6: That during the 1966, 1967, and 1968 mining season, the plaintiffs RICHARD E. LEE and PHYLLIS LEE, remained in the belief that they had a right to purchase the Cape Creek claims pursuant to the March 25, 1965 agreement, that they offered royalty payments to the defendants for the 1967 production from these claims, and that the plaintiffs behaved as if they had the right to purchase these claims prior to June 4, 1969, when the Alaska Supreme Court reversed the judgment of the Superior Court.

CONCLUSION NO. 10: That during the 1966, 1967 and 1968 mining seasons, the plaintiffs were "good faith" trespassers on the said claims and not "willful trespassers" . . . .

10. "Every trespass is *prima facie* wilful, and where a trespass is conceded . . . the burden of proof is on defendant to show that the trespass is not wilful." *Bostic v. Whited,* 198 Va. 237, 93 S.E.2d 334, 335 (1956). *See also, United States v. Wyoming*, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590 (1947); *Kycoga Land Co. v. Kentucky River Coal Corp.*, 110 F.2d 894, 897 (6th Cir. 1940), *cert. denied,* 312 U.S. 688, 61 S.Ct. 615, 85 L.Ed. 1125; *Elkhorne-Hazard Coal Co. v. Kentucky River Coal Corp.*, 20 F.2d 67, 71 (6th Cir. 1927); *Liberty Bell Gold Mining Co. v. Smuggler-Union Mining Co.*, 203 F. 795, 802–05 (8th Cir. 1913), *cert. denied,* 231 U.S. 747, 34 S.Ct. 320, 58 L.Ed. 464; *St. Clair v. Cash Gold Mining & Milling Co.*, 9 Colo.App. 235, 47 P. 466, 469 (1896); *Runkle v. Muskingum Coal Co.*, 140 N.E.2d 441, 445 (Common Pleas, Ohio 1955); Anno. 21 A.L.R.2d 380, 395; American Law of Mining, Vol. 4, § 21.10 (Rocky Mountain Mineral Law Foundation 1973).

11. Our order specified:
This case is remanded to the Honorable Victor D. Carlson, Judge of the Superior

stated that he had placed the burden of proof on Alaska Placer. This was erroneous.[12] We find, however, that the placement of the burden of proof was harmless error,[13] since the trial court, in further response, stated:

> I found the Lees to be good faith trespassers and would have so found if I had considered the burden of proof to be on them.

## II. THE FINDING AS TO GOOD FAITH TRESPASS

■ This court will not set aside a finding of fact of a trial judge unless it is clearly erroneous.[14] A finding is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction on the entire record that a mistake has been made.[15] We must also give due regard to the trial court's opportunity to judge the credibility of the witnesses.[16]

In the instant case, the Lees were in lawful possession of the premises under a contract. There was a bona fide dispute as to whether they had a right to remain on the premises after the notice of forfeiture in October 1965—enough of a dispute to convince a superior court judge that the Lees were within their contractual rights in remaining.

The Lees testified to the following reasons for returning to mine the Cape Creek claims in 1966 after the notice of forfeiture in October 1965 and the trial on appellant's permanent injunction in August 1966: they felt that the forfeiture was "completely unjust and arbitrary" in view of their putting their "utmost ability" into getting the mine activated and into production; they relied on the legal opinion of Mr. Martin Wolf, a Seattle attorney, that the forfeiture notice was invalid; Neil Kennelly, the Lees' Alaskan attorney at trial, "was definitely of the opinion that we should go back and had full knowledge that we were going back" after the trial; during the week-long trial, Judge Sanders told the Lees that he knew they were anxious to get back to the mining claims; the trial itself led Lee to feel "that we were within out rights and within the scope of our agreement to return"; the 30-day remedial provision in the contract required

Court, Third Judicial District, for the purpose of answering the following question:
1. On whom did you place the burden of proof as to the issue of whether the trespass was in good faith?
2. In the event that you placed the burden of proof of that issue on Alaska Placer Company, review the evidence and advise the Court on or before March 26, 1976, as to whether you would have resolved the issue of good faith trespass differently if the burden of proof had been placed on the Lees.

12. In fairness to the trial judge, we can' understand his concluding that the burden is on the plaintiff to show bad faith. In *Schafer v. Schnabel*, 494 P.2d 802, 804–05 (Alaska 1972), it might appear that this court adopted the ruling of the trial court which placed the burden on the plaintiff to show bad faith in a similar case. However, this court's discussion of the burden of proof in *Schafer v. Schnabel, supra*, was limited to resolving whether or not the trial court had abused its discretion in making a factual determination. The legal issue as to where the burden was placed was not raised or briefed by either party, and therefore, was not properly before the court. It might also be noted that while there is some authority which places the burden of proving bad faith on the plaintiff, *Edwards v. Lachman*, 534 P.2d 670, 673 (Okla. 1975); *Dilworth v. Fortier*, 405 P.2d 38, 45–46 (Okla.1964), we decline to follow those decisions for the reason that the trespasser is in a better position to present evidence as to whether his actions were taken in good faith.

13. *Love v. State*, 457 P.2d 622, 629–34 (Alaska 1969).

14. *Day v. A & G Const. Co., Inc.*, 528 P.2d 440 (Alaska 1974); *Larman v. Kodiak Elec. Ass'n*, 514 P.2d 1275 (Alaska 1973).

15. *A.R.C. Industries, Inc. v. State*, 551 P.2d 951 Opin. No. 1283, (Alaska 1976); *A & G Construction Co., Inc. v. Reid Brothers Logging Co., Inc.*, 547 P.2d 1207 (Alaska 1976); *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974).

16. *Hendricks v. Knik Supply, Inc.*, 522 P.2d 543, 547 (Alaska 1974); *Amick v. Metro. Mort. & Securities Co.*, 453 P.2d 412, 415 (Alaska 1969).

30 days of mining weather, not available after the forfeiture notice until the 1966 mining season.

After Judge Sanders issued his oral opinion ruling for the Lees and against Alaska Placer in December 1966, they returned again in 1967 and 1968. The Lees attempted to pay royalties to Alaska Placer of $10,092 and $2,360 for the 1967 season, but the checks were returned to them. Lee testified that he never tendered the 1968 royalty payments to appellant "for the reason that my '67 payments were rejected". The Lees quit the claims in June of 1969 when this court rendered its decision in *Alaska Placer Co. v. Lee, supra.*

■ Reliance on the advice of a reputable attorney has been held to be a sufficient basis for a finding that a trespass was made in good faith.[17] Alaska Placer argues, however, that there was not good faith reliance on the advice of counsel due to the Lees' failure to furnish full information to attorney Wolf and the absence of specific testimony that the Lees relied on Mr. Kennelly's advice to go back on the property. The trial court must evaluate whether advice of counsel is being furnished for tactical reasons and whether there has been a good faith reliance on the advice. This is a typical decision for the trier of fact, and we cannot say that the trial court erred when it found that subsequent to October 6, 1965, the Lees continued to mine the claims relying on the advice of their attorneys that they had the right to continue mining.[18]

Moreover, the court found that in the period subsequent to the first decision by the superior court until its reversal, the Lees relied on that decision. There are cases holding a trespass to be willful when minerals are removed from disputed property after a lower court decision which has been appealed.[19] With the exception of *Houston Production Co. v. Mecom Oil Co., 62 S.W.2d 75* (Com.App.Tex.1933), those cases involve factual findings by the trial court of a lack of good faith in direct contrast with the findings of the trial court here.

The court in *Houston Production Co., supra,* distinguished between those cases where the trespassers entered the land and removed minerals for the first time after suit was filed, and those where the trespassers entered before suit was instituted and made mining or drilling expenditures at a time when they were in peaceable possession. For the latter type of trespassers, the court stated that the general rule that bad faith trespassing occurs when one enters and improves land with knowledge that an action involving an adverse claim is pending is too broad. In all of the cases relied on by Alaska Placer, the trespassers entered and exploited the land for the first time after the institution of legal action. In the instant case, the Lees entered the land under a valid lease and made expenditures for mining operations there while they were in peaceable possession before legal action was instituted. According to the reasoning in *Houston Production Co.,*

---

17. *Elk Horn Coal Co. v. Anderson Coal Co.,* 223 F.Supp. 746, 750 (E.D.Ky.1963); *Swiss Oil Corp. v. Hupp,* 253 Ky. 552, 69 S.W.2d 1037, 1041–42 (1934). *See also Mason v. United States,* 260 U.S. 545, 43 S.Ct. 200, 67 L.Ed. 396 (1923); *Delta Drilling Co. v. Arnett,* 186 F.2d 481, 486 (6th Cir. 1950); *Daly v. Smith,* 220 Cal.App.2d 592, 33 Cal.Rptr. 920, 924 (1963); *Cooke v. Gulf Refining Co.,* 135 La. 609, 65 So. 758, 761 (1914).

18. Finding of Fact No. 8 referred to the advice of the attorneys. Finding No. 21 stated that the Lees were good faith trespassers. The specific finding of reliance on the attorneys' advice is labelled as Conclusion No. 5, but when combined with Findings No. 8 and 21, there is a clear indication that the court made the necessary finding of reliance on counsels' advice.

19. *Shell Oil Co., Inc. v. Manley Oil Corp.,* 50 F.Supp. 21, 25 (E.D.Ill.1942); *Johnson v. Pavich,* 168 Colo. 382, 451 P.2d 440, 442 (1969); *Rieckhoff v. Consolidated Gas Co.,* 123 Mont. 555, 217 P.2d 1076 (1950); *Texas Co. v. Pettit,* 107 Okl. 243, 220 P. 956 (Okla.1923); *Houston Production Co. v. Mecom Oil Co.,* 62 S.W.2d 75 (Com.App.Tex. 1933).

the rule as to bad faith trespassing when one knows of pending adverse claims should not apply to the Lees.[20]

■ A finding of willful trespass results in a form of punitive damages for public policy reasons and should be applied sparingly. It is a harsh remedy whereby the plaintiff is permitted to recover more than his actual damages.

■ Since punitive damages are assessed as an example and warning to others, and a primary concern of law is payment of just compensation for the wrong done, punitive damages are not favored in law. They are to be allowed only with caution and within narrow limits.[21]

In the absence of the trespass, Alaska Placer would either have had to incur the expenses of mining the tin or pay a royalty to the miner. Nor do we have the situation where an owner does not wish to have ore or timber removed. Had the Lees complied with the contract, Alaska Placer was perfectly agreeable to the removal of the ore. Thus, application of the harsh rule of damages would confer a windfall on Alaska Placer whereby they would receive far more than otherwise could have been derived from mining the property, while imposing a corresponding severe penalty on the Lees substantially in excess of the actual damages resulting from their trespass. Only under the flagrant conditions of a willful trespass should such a result ensue.

■ Based on the testimony and demeanor of the witnesses, the trial court found that the Lees honestly and reasonably believed they were rightfully mining the claims until our reversal of the 1966 superior court decision, at which time they promptly departed from the premises. The finding of good faith trespass is not clearly erroneous.[22]

## III. MEASURE OF DAMAGES

Alaska Placer contends that the measure of damages applied by the trial court—the contract royalty rate of 15 per cent of the net profit—was an abuse of discretion. The proper measure of damage, it is argued, is market price less cost of extraction.

In the instant case, the Lees originally requested the measure of damages which Alaska Placer now urges, but contended that their costs were greater than the market value of the ore. Testimony as to the Lees' costs revealed that their financial records were unclear: the bookkeeping was done in the name of Lee Bros. Dredging Co. and included some expenses and assets which were not directly related to the Cape Creek claims. The Lees then requested a 10 percent royalty rate, standard compensation for mineral property which is leased without an option to buy. The trial court exercised its discretion to provide compensation to the owner at the same royalty rate as if no forfeiture of the contract had occurred—15 percent of net

**20.** *See also Zelma Oil Co. v. Nemo Oil Co.,* 84 Okl. 217, 203 P. 203 (1921); *Barnes v. Winona Oil Co.,* 83 Okl. 253, 200 P. 985 (1921).

**21.** *See, e. g., Lee v. Southern Home Sites Corp.,* 429 F.2d 290, 294 (5th Cir. 1970), *appeal after remand,* 444 F.2d 143 (5th Cir. 1971); *Brown v. Coates,* 102 U.S.App.D.C. 300, 253 F.2d 36, 39 (1958); *Aladdin Mfg. Co. v. Mantle Lamp Co. of America,* 116 F.2d 708, 719 (7th Cir. 1941); *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 367 F.Supp. 860, 864 (D.Md.1973), *reversed on other grounds,* 517 F.2d 1141 (4th Cir. 1975); *Wright v. Kaine Realty,* 352 F.Supp. 222 (N.D.Ill.1972); *Gombos v. Ashe,* 158 Cal. App.2d 517, 322 P.2d 933, 939 (1958); *Zol-*

*linger v. Big Lost River Irr. Dist.,* 83 Idaho 411, 364 P.2d 176, 179 (1961); *Southwestern Greyhound Lines, Inc. v. Rogers,* 267 P. 2d 572, 573 (Okl.1954); *Becker v. Pearson,* 241 Or. 215, 405 P.2d 534, 537 (1965); *Perez v. Central Nat. Ins. Co. of Omaha,* 215 Or. 107, 332 P.2d 1066, 1067 (1958); *Cays v. Mc Daniel,* 204 Or. 449, 283 P.2d 658, 661 (1955), *overruled on other grounds, Robertson v. Robertson,* 140 Cal.App.2d 784, 295 P.2d 922 (1956); *Maki v. Aluminum Bldg. Products,* 73 Wash.2d 23, 436 P.2d 186, 187 (1968).

**22.** In *Schafer v. Schnabel,* 494 P.2d 802, 805–06 (Alaska 1972), we similarly upheld a trial court's finding that a trespass was not willful so as to justify a punitive measure of damages.

mineral value. Alaska Placer contends that 15 percent of net mineral value is an arbitrary figure bearing no rational relationship to any expenses actually incurred by the Lees. The Lees are being rewarded for their poor recordkeeping, it is argued, if the court uses a percentage recovery because they were unable to prove their expenses at trial. "The wrongdoer who fails to show any expenses is thus unjustly enriched . . . ."

Alaska Placer, however, failed to object to the royalty method when its application was raised during trial. This court will not consider matters on appeal which were not first presented to the trial court,[23] but in order to give guidance in future cases, we shall comment on this issue.

There is an acceptable line of authority measuring damages in cases of a good faith trespass by use of a royalty rate.[24] The 15 percent royalty rate was the contract price agreed upon by the parties and higher than the customary rate for mining under a lease without an option to purchase. Alaska Placer is receiving the compensation it would have received had there been no forfeiture. If we were to rule on this issue, we would find no abuse of discretion in applying the royalty measure of damages under these circumstances.[25]

## IV. ATTORNEY'S FEES

Alaska Placer contends that the Lees were not the prevailing party under Civil Rule 82 and thus were not entitled to an award of attorney's fees. The Lees sought recovery of $73,298.34 [26] and were awarded $34,026.91. The award was based on offsetting against the $73,298.34 the amount of royalties due Alaska Placer for the three years of production while the Lees were trespassers.[27] Alaska Placer thus prevailed in part on its counterclaim for

---

23. *State v. 7,536 Acres*, 431 P.2d 897, 900 (Alaska 1967); *Schenderline v. Robertson*, 394 P.2d 395, 397 (Alaska 1964). *See also Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964).

24. Both the royalty rate and market price less cost of extraction are accepted measures of damages for good faith trespassers who remove minerals, although the latter is now more widely used. Anno., Right of trespasser to credit for expenditures in producing . . . oil or minerals, 21 A.L.R.2d 380, 383–91 (1952). Cases stating or applying the royalty method include *Minerals & Chemicals Philipp Corp. v. Milwhite Co.*, 414 F.2d 428, 431 (5th Cir. 1969); *National Lead Co. v. Magnet Cove Barium Corp.*, 231 F.Supp. 208, 217–18 (W.D.Ark.1964); *Kycoga Land Co., Inc. v. Kentucky River Coal Corp.*, 110 F.2d 894, 898 (6th Cir. 1940), *cert. denied*, 312 U.S. 688, 61 S.Ct. 615, 85 L.Ed. 1125 (1940); *Marin Rock & Asphalt Co.*, 296 F.Supp. 1213, 1218–19 (D.Cal.1969) ("The royalty formula obviously is a simpler one to apply. It does not involve the parties or the court in any complicated accounting. It provides damages to the aggrieved party even where the trespasser's operations have proved unprofitable." 296 F.Supp. at 1219); *Bostic v. Whited*, 198 Va. 237, 93 S.E.2d 334 (1956).

25. In stating this opinion, this court does not mean to indicate that it will always be more appropriate to apply the royalty rate standard than the standard of market price less cost of extraction. It is conceivable that under some circumstances the royalty rate might not be as accurate a measure of damage to the plaintiffs. In the present case, however, not only did Alaska Placer fail to object at trial, Alaska Placer further has failed to establish in the record how the royalty rate does not adequately compensate them. At the close of the trial, the trial court indicated its willingness to have further argument or accept written briefing on the subject of damages, should there be disagreement. The record does not indicate that plaintiffs presented any written or oral arguments which object to the royalty rate or explain why it is unfair.

26. The amount received by Alaska Placer from the Wah Chang Corporation was $75,298.39, and the Lees acknowledged an offset for costs and attorney's fees due Alaska Placer in the first suit in the sum of $2,645.05.

27. The proceeds from the claims were:
    1966 — $ 75,943.39
    1967 — 80,245.91
    1968 — 105,620.17
    The 15 per cent royalties amounted to $39,271.44.

the proceeds of the sale of tin ore removed from the claims after 1965.

▋ This court has held that a party may prevail even if he does not recover the full measure of relief prayed for.[28] Furthermore, a litigant who successfully defeats a claim of great potential liability may be the prevailing party, even though the other side is successful in receiving an affirmative recovery.[29] In the instant case, the Lees may be regarded as having successfully defended against a counterclaim of approximately $261,809.00—proceeds from the sale of ore during 1966, 1967 and 1968 without offset for costs—since Alaska Placer was awarded only 15 per cent of that amount.

▋ A party may be the "prevailing party" if he is successful with regard to the "main issue in the action".[30] The main issue in this case was whether the Lees were good faith or willful trespassers after October 5, 1965. The appropriate measure of damages, which controlled the Lees' recovery on their complaint and Alaska Placer's award on its counterclaim, depended on this determination. The Lees clearly prevailed in the lower court when

they were found to be good faith trespassers.

▋ This court has recognized that the trial judge has wide discretion in awarding attorney's fees to a prevailing party.[31] We will interfere only where the trial court's determination as to attorney's fees appears to be "manifestly unreasonable".[32] Alaska Placer failed to show that it was manifestly unreasonable to award attorney's fees to the Lees according to the schedule of attorney's fees set out in Civil Rule 82(a)(1).[33]

In conclusion, the burden of proving good faith is on the trespasser; the misplacement of that burden was harmless error; the finding as to good faith trespass was not clearly erroneous; the court did not abuse its discretion in determining the measure of damages; and the award of attorney's fees was not manifestly unreasonable. The superior court's opinion is, therefore,

AFFIRMED.

CONNOR and ERWIN, JJ., did not participate.

28. *Buza v. Columbia Lumber Co.*, 395 P.2d 511, 514 (Alaska 1964).

29. *Owen Jones & Sons, Inc. v. C. R. Lewis Co.*, 497 P.2d 312, 314 (Alaska 1972).

30. *Cooper v. Carlson*, 511 P.2d 1305, 1308 (Alaska 1973).

31. *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975); *City of Valdez v. Valdez Development Co.*, 523 P.2d 177, 184 (Alaska 1974); *Cooper v. Carlson, supra*, 511 P.2d at 1309.

32. *Girves v. Kenai Peninsula Borough, supra*, 536 P.2d at 1227; *Western Airlines, Inc. v. Lathrop Co.*, 535 P.2d 1209, 1217 (Alaska 1975); *Lynden Transport, Inc. v. State*, 532 P.2d 700, 717 n. 52 (Alaska 1975); *Adoption of V.M.C.*, 528 P.2d 788, 795 (Alaska 1974).

33. Civil Rule 82 provides in part:

*(a) Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

|  | | Contested | Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $2,000 | 25% | 20% | 15% |
| Next | $3,000 | 20% | 15% | 12.5% |
| Next | $5,000 | 15% | 12.5% | 10% |
| Over | $10,000 | 10% | 7.5% | 5% |